**Marvin MOORER, Plaintiff,**

v.

**GRUMMAN AEROSPACE CORPORATION, Defendant.**

**No. CV 94–3755.**

United States District Court, E.D. New York.

May 19, 1997.

Krupnick & Goldman, Garden City, N.Y., for Plaintiff; by Sheldon M. Krupnick, Gary M. Mionis.

Morgan, Lewis & Bockius, LLP, New York, N.Y. for Defendant; by Christopher A. Parlo, Anita W. Coupe.

## MEMORANDUM DECISION AND ORDER

SPATT, District Judge.

This lawsuit arises out of the claims of the plaintiff, Marvin Moorer (the "plaintiff"), that the defendant, Grumman Aerospace Corporation (the "defendant"), violated Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e *et seq.* ("Title VII"), 42 U.S.C. § 1981 ("Section 1981"), and New York State Executive Law § 296, also known as the New York Human Rights Law (the "New York Human Rights Law"), by discriminating against the plaintiff on the basis of his "race and color". Presently before this Court are the defendant's motions: (1) for summary judgment pursuant to Fed.R.Civ.P. 56; (2) to strike, in its entirety, the affidavit of Marvin Moorer dated October 7, 1996, or in the alternative, each portion of the affidavit that does not comply with Fed.R.Civ.P. 56; and (3) for sanctions equivalent to the amount of reasonable expenses incurred as a result of the plaintiff's affidavit pursuant to Fed. R.Civ.P. 56(g).

## I. BACKGROUND

### A. *Local Civil Rule 56.1 statement*

■ As a preliminary matter, the Court notes that the plaintiff failed to file a statement of material facts as to which there exists a genuine issue of material fact in response to the defendant's summary judgment motion as required by Local Civil Rule 56.1 ("Rule 56.1 statement"), formerly Local Civil Rule 3(g). Rather, the plaintiff filed a list of rhetorical questions, labelling these questions as a Rule 56.1 statement. Howev-

er, the plaintiff did submit an affidavit and memorandum in opposition to defendant's motion. To the extent that there is some dispute between the defendant's Rule 56.1 statement and the plaintiff's papers, the facts will be viewed in the light most favorable to the plaintiff. However, any facts in the defendant's Rule 56.1 statement which remain uncontroverted by the plaintiff's papers will be accepted as true. *See Dusanenko v. Maloney,* 726 F.2d 82, 84 (2d Cir.1984).

### B. *Factual background*

The plaintiff, Marvin Moorer, is a 47 year old African–American male residing in North Babylon, New York. On or about November 13, 1967, the plaintiff became employed by the defendant to fill the position of riveter/assembler and to perform other structural assembly work. Since November, 1967, except for a twenty month period during 1969 and 1970 when the plaintiff was in military service, the plaintiff has been and continues to be an at-will employee of the defendant. Over the last thirty years, the plaintiff has received three promotions: (1) to inventory planner and analyst in 1978; (2) to program planner and scheduler in 1984; and (3) to program representative for machine parts in 1986. The plaintiff remained in the latter position until 1991.

In January, 1991, the plaintiff was transferred from the position of program representative for machine parts to the position of senior program coordinator. In addition, the defendant downgraded the plaintiff's position code one level from exempt to non-exempt status, which affected potential future raises for an undetermined amount of time, but did not affect his then salary or benefits. Simultaneously, the defendant also lowered the exempt/non-exempt position codes of four Caucasian employees within the plaintiff's department. The downgrades were authorized by William Vreeland ("Vreeland"), the plaintiff's manager, who believed that the titles held by the five employees were not indicative of the work they were performing.

The plaintiff's May, 1991 performance evaluation as a *customer interface representative*

for the machine parts department states in relevant part:

> Mr. Moorer's ability to maintain status of his assigned programs is handled well. Additionally he is able to maintain a look ahead in resolving problem areas prior to customer impact.
>
> Marvin has also proved his ability in answering direct [sic] to our customers, maintaining a flow of information, of real time status. His knowledge and use of manufacturing systems aids his abilities of accurate machine part statusing.

The plaintiff's May, 1992 performance evaluation as a customer interface representative for the machine parts department states in relevant part:

> Marvin is diligent and concerned in his approach to his duties. He has shown a willingness to do whatever needs to be done in support of our customers. He accepts and follows direction readily.
>
> Marvin's attendance, housekeeping and safety habits are very good.

On both the May, 1991 and May, 1992 performance evaluations, the plaintiff was given a 300 out of a possible rating of 500, with 500 denoting outstanding. A rating of 300 denotes that the plaintiff met expectations of the supervisor completing the evaluation.

On July 24, 1992, the plaintiff was selected for inclusion in a reduction in force ("RIF"), with the earliest possible date of termination to be September 3, 1992. At the time, the plaintiff was ranked eighth out of ten people in his department on a Termination Review Report Position Rank Order Form (the "Termination Review Report"). The Termination Review Report dated July 24, 1992 states that the reason for the plaintiff's selection for RIF was "budget/manpower reduction" and that the plaintiff's selection was due to "ranking in skill." Significantly, the individuals rated below him were laid-off during a RIF in September, 1992. Even more significantly, the individual rated above him was laid-off in June, 1993. All three of these persons are Caucasian. In fact, from 1991 to 1993, 15 of the 28 people in the plaintiff's department were RIF'd or otherwise left the department, and only one of these 15 people was African-American. Plaintiff's RIF paperwork was "revalidated" and extended into 1993.

In January, 1993, the plaintiff was selected for another RIF, with the earliest possible RIF date being January 21, 1996. Although the plaintiff was placed in the RIF category, he was never laid-off. The plaintiff appealed his situation to the defendant's Personnel Relations department and to the President of the Company, Renzo Caporali. His appeal was successful and consequently, the plaintiff received a transfer to the Property Management department. The plaintiff could not identify any other position open at the time he was selected for RIF into which he could have been transferred. Upon his transfer, the duties which were previously fulfilled by the plaintiff were distributed among at least five people remaining in the department.

The plaintiff was transferred to the Property Management department in March, 1993. During his tenure in this department, the plaintiff was spoken to regarding numerous performance issues: too many personal calls; being away from his desk on too many occasions during the day; returning late from lunch; and failing to appropriately notify superiors in advance as to when he would take time off from work. In addition, during a three month period, the plaintiff was absent from work for thirteen and one-half days.

On July 16, 1993, the plaintiff received an adverse evaluation from Pat Jacklets, his manager in the Property Management department. The plaintiff received an overall rating of "1" out of a possible "5", which was an "unsatisfactory" rating. In addition, the July 16, 1993 performance evaluation detailed the plaintiff's performance problems including lack of concentration, wandering away from his desk for extended periods of time, and making too many personal calls. It was recommended in this evaluation that the plaintiff be transferred to a position that is "not as complex as Property Management which requires self-motivation and the ability to work alone." At that time, the Property Management department was required to lay-off one person. The plaintiff was not selected for that layoff.

In July, 1993, the plaintiff was transferred to the Sealant Laboratory. Once again, at the time of the transfer, the plaintiff was unable to identify any other available position for which he was qualified to fill. A Caucasian employee was also transferred to the Sealant Laboratory along with the plaintiff.

In November, 1994, the Sealant Laboratory began its phase out program. Although several Caucasian employees were laid off, the plaintiff was transferred to another position within the warehouse.

Prior to that time, on November 3, 1993, the plaintiff filed charges of race, color and age discrimination with the State of New York, State Division of Human Rights, which charges were cross filed with the Equal Employment Opportunity Commission (the "EEOC"), the federal agency. The plaintiff's discrimination charge was based on his selection for the January 1993 RIF. On June 28, 1994, at the request of the plaintiff's attorney, the EEOC issued a "Notice of Right to Sue."

### C. *The complaint*

On August 11, 1994, the plaintiff filed his complaint with this Court. Included among the causes of action are claims based on violations of Title VII, the New York Human Rights Law, Section 1981, and negligent and intentional infliction of emotional distress. The plaintiff seeks declaratory and injunctive relief, back pay, future pay, and compensatory and punitive damages.

In an Order dated August 24, 1995, the Court dismissed with prejudice and on the merits, any and all claims that the plaintiff may have under New York State law, except for any claims the plaintiff may have under Section 296. The plaintiff's claims for intentional and negligent infliction of emotional distress were dismissed under this Order.

## II. DISCUSSION

### A. *Summary judgment standard*

A court may grant summary judgment only if the evidence, viewed in the light most favorable to the party opposing the motion, presents no genuine issue of material fact, *Samuels v. Mockry,* 77 F.3d 34, 35 (2d Cir.

1996), and the movant is entitled to judgment as a matter of law. *See Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986); *see also* Fed. R.Civ.P. 56(c) (summary judgment standard). The Court must, however, resolve all ambiguities and draw all reasonable inferences in the light most favorable to the party opposing the motion. *See Quaratino v. Tiffany & Co.,* 71 F.3d 58 (2d Cir.1995); *Twin Laboratories, Inc. v. Weider Health & Fitness,* 900 F.2d 566, 568 (2d Cir.1990); *Knight v. U.S. Fire Ins. Co.,* 804 F.2d 9, 11 (2d Cir.1986), *cert. denied,* 480 U.S. 932, 107 S.Ct. 1570, 94 L.Ed.2d 762 (1987).

According to the Second Circuit, "[s]ummary judgment is a tool to winnow out from the trial calendar those cases whose facts predestine them to result in a directed verdict." *United National Ins. Co. v. The Tunnel, Inc.,* 988 F.2d 351, 355 (2d Cir.1993). Once a party moves for summary judgment, in order to avoid the granting of the motion, the non-movant must come forward with specific facts showing that a genuine issue for trial exists. *West–Fair Elec. Contractors v. Aetna Cas. & Surety Co.,* 78 F.3d 61, 63 (2d Cir.1996); *see also Western World Ins. Co. v. Stack Oil, Inc.,* 922 F.2d 118, 121 (2d Cir. 1990) (quoting Fed.R.Civ.P. 56(e)). A genuine issue of material fact exists if "a reasonable jury could return a verdict for the non-moving party." *Liberty Lobby,* 477 U.S. at 248, 106 S.Ct. at 2510; *see Vann v. New York City,* 72 F.3d 1040 (2d Cir.1995).

However, mere conclusory allegations, speculation or conjecture will not avail a party resisting summary judgment. *Kulak v. City of New York,* 88 F.3d 63, 70 (2d Cir. 1996). If there is evidence in the record as to any material fact from which an inference could be drawn in favor of the non-movant, summary judgment is unavailable. *Holt v. KMI–Continental, Inc.,* 95 F.3d 123 (2d Cir. 1996); *Rattner v. Netburn,* 930 F.2d 204, 209 (2d Cir.1991). Finally, the Court is charged with the function of "issue finding", not "issue resolution." *Gallo v. Prudential Residential Services,* 22 F.3d 1219, 1224 (2d Cir. 1994).

The general principles underlying a motion for summary judgment apply no less to this action simply because it is an employment discrimination case. While caution is to be exercised in granting summary judgment where intent and state of mind is in issue, *Gallo, supra,* 22 F.3d at 1224, summary judgment remains available where no genuine issue exists as to a material fact, *Chambers v. TRM Copy Centers Corp.,* 43 F.3d 29, 40 (2d Cir.1994). For a plaintiff in a discrimination case to survive a motion for summary judgment, the plaintiff must offer "concrete particulars" to substantiate the claim. *Meiri v. Dacon,* 759 F.2d 989 (2d Cir.), *cert. denied,* 474 U.S. 829, 106 S.Ct. 91, 88 L.Ed.2d 74 (1985).

It is within this framework that the Court addresses the grounds for the present motion for summary judgment

### B. The plaintiff's affidavit

In addition to the defendant's motion for summary judgment, the defendant moves to strike, in its entirety, the affidavit of Marvin Moorer dated October 7, 1996, or in the alternative, each portion of the affidavit that does not comply with Fed.R.Civ.P. 56, and for reasonable expenses incurred as a result of the plaintiff's affidavit. The defendant contends that portions of the plaintiff's affidavit contain inadmissible hearsay, are not based on the plaintiff's personal knowledge, contain conclusory allegations and legal arguments, and directly contradict the plaintiff's previous sworn deposition testimony.

Hearsay statements set forth in the plaintiff's affidavit which cannot be categorized as a hearsay exception, conclusory allegations, legal arguments and statements not based upon personal knowledge will be stricken. *See Caldwell v. The American Basketball Assoc.,* 825 F.Supp. 558, 572 (S.D.N.Y.1993), *aff'd,* 66 F.3d 523 (2d Cir.1995), *cert. denied,* —— U.S. ——, 116 S.Ct. 2579, 135 L.Ed.2d 1094 (1996) (hearsay); *Kamen v. American Tel. & Tel. Co.,* 791 F.2d 1006, 1011 (2d Cir.1986) (conclusory allegations and legal arguments); *Sellers v. M.C. Floor Crafters, Inc.,* 842 F.2d 639, 643 (2d Cir.1988) (personal knowledge). Merely because the plaintiff's affidavit conflicts with his deposition testimony does not nullify the value of the affidavit. "[T]he court may not exclude the affidavit from consideration in the determination of the question whether there is any genuine issue as to any material fact." *Perma Research & Development Co. v. Singer Co.,* 410 F.2d 572, 578 (2d Cir.1969) (citation omitted). This Court will examine conflicting statements in the plaintiff's affidavit and the deposition testimony, if any, to determine the weight to give to these statements.

### C. Plaintiff's race discrimination claims

#### i. Statutory time requirements

The defendant contends that the plaintiff's claim for relief for the skill code change in 1991 from exempt to non-exempt status is untimely under Title VII and the New York Human Rights Law. It was revealed during discovery that the plaintiff's skill code change occurred in January, 1991, not September, 1991 as alleged in the complaint. The plaintiff does not dispute that his claim may be barred by the applicable time limitations but maintains that the defendant has waived this affirmative defense by its failure to assert it in its answer. The statutory time requirements are analogous to a statute of limitations. *Van Zant v. KLM Royal Dutch Airlines,* 80 F.3d 708, 712 (2d Cir.1996).

> Fed.R.Civ.P. 8(c) provides in relevant part:
> ... a party shall set forth affirmatively ... statute of limitations ... and any other matter constituting an avoidance or affirmative defense.

However, "absent prejudice to the plaintiff, a defendant may raise an affirmative defense in a motion for summary judgment for the first time." *DeVito v. Pension Plan of Local 819 I.B.T.,* No. 90 CIV. 5299, 1997 WL 26292 at *4 (S.D.N.Y.1997) (citation omitted). Although the defendant has not asserted the untimeliness of plaintiff's claims under Title VII and the New York Human Rights Law as an affirmative defense, the Court deems defendant's motion for summary judgment to include a motion to amend its answer pursuant to Fed.R.Civ.P. 15(a). *See Block v. First Blood Assocs.,* 988 F.2d 344, 350 (2d Cir. 1993). Fed.R.Civ.P. 15(a) provides that leave

to amend "shall be freely given when justice so requires." A party may amend its pleadings in the absence of prejudice or bad faith by the moving party. *See id.* at 350.

The plaintiff in the present case does not allege any prejudice resulting from defendant's assertion of this affirmative defense, nor does the Court find any evidence of bad faith by the defendant's prior failure to amend its answer. The plaintiff had notice of this affirmative defense as early as May 10, 1995 when the issue was raised in a letter by defendant's attorney to the plaintiff's former counsel, Valerie A. Hawkins, Esq. The issue was raised again in defendant's Rule 56.1 statement dated February 21, 1996. In addition, the complaint incorrectly states that the plaintiff's skill code change occurred in September, 1991, rather than in January, 1991. The complaint was never amended by the plaintiff. Therefore, the Court concludes that the defendant may properly assert that the plaintiff's claims arising from Title VII and the New York Human Rights Law are time barred.

■ Under Title VII, a plaintiff must file a discrimination claim with the EEOC within 300 days of the alleged violation. *See* 42 U.S.C. § 2000e–5(e). Claims arising under the New York State Human Rights Law must be filed within three years of the alleged discriminatory act. *Lightfoot v. Union Carbide Corp.,* 110 F.3d 898, 907 (2d Cir. 1997) (citing *Murphy v. American Home Products,* 58 N.Y.2d 293, 307, 461 N.Y.S.2d 232, 239, 448 N.E.2d 86 (1983)).

■ Under Title VII, timely filing with the EEOC is a prerequisite for bringing suit in federal court, although the requirement may be excused on equitable grounds. *Zipes v. Trans World Airlines, Inc.,* 455 U.S. 385, 102 S.Ct. 1127, 71 L.Ed.2d 234 (1982). However, conduct that occurred more than 300 days before an EEOC filing may be included in a cause of action if it is a continuing pattern of discrimination. *Cornwell v. Robinson,* 23 F.3d 694, 704 (2d Cir.1994). A continuous violation may be established by alleging a "series of related acts, one or more of which fall within the limitations period, or the maintenance of a discriminatory system both before and during the limitations period." *Var-*

*rone v. Staten Island Univ. Hosp.,* No. 96–CV–3132, 1996 WL 524390 (E.D.N.Y. Sept. 6, 1996) (citing *LaBeach v. Nestle Co., Inc.,* 658 F.Supp. 676 (S.D.N.Y.1987)).

Plaintiff contends that the 1991 demotion and skill code change from a supervisory level to a non-supervisory level caused him to be eligible to be included in a RIF. Indeed, the Plaintiff was RIF"d in July, 1992. Plaintiff's RIF paperwork was "revalidated" and extended into 1993. On January 1, 1993, the plaintiff was identified for another RIF. The January 1993 RIF was the basis for the plaintiff's complaint filed with the EEOC on November 3, 1993 alleging discrimination based on the plaintiff's race, age and color. Given these facts, the plaintiff has alleged a continuing violation through a series of related acts beginning with the plaintiff's skill code change and transfer in 1991. Therefore, the plaintiff's claim under Title VII arising from the plaintiff's skill code change in 1991 is not time barred. Likewise, the plaintiff's claim under the New York Human Rights Law is not time barred. *See Harris v. The New York Times,* No. 90 CIV. 5235, 1993 WL 42773 (S.D.N.Y. Feb. 11, 1993) (continuing violation doctrine applies to claims arising under Title VII and the New York Human Rights Law).

### ii. The *McDonnell Douglas analysis*

The plaintiff asserts that any reason proffered by the defendant in. support of its decision to demote the plaintiff was merely a pretext for race discrimination. The Court examines the plaintiff's allegations of race discrimination pursuant to Title VII under the three-step burden shifting analysis developed by the Supreme Court in *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973). This three step burden shifting analysis also applies to the plaintiff's claim under the New York Human Rights Law. *See Van Zant, supra,* 80 F.3d at 714–15 (citing *Tomka v. Seiler Corp.,* 66 F.3d 1295, 1304 n. 4 (2d Cir.1995)).

First, the plaintiff bears the initial burden of proving by the preponderance of the evidence a *prima facie* case of discrimination.

Second, if the plaintiff succeeds, the burden of production shifts to the employer to articulate some legitimate, nondiscriminatory reason for the plaintiff's demotion. Third, should the defendant advance such a reason or reasons, the plaintiff bears the ultimate burden to prove that the legitimate reasons offered by the employer were merely a pretext for intentional racial discrimination. *McDonnell Douglas Corp., supra,* 411 U.S. at 802–03, 93 S.Ct. at 1824–25; *Texas Dep't of Community Affairs v. Burdine,* 450 U.S. 248, 252–53, 101 S.Ct. 1089, 1093–94, 67 L.Ed.2d 207 (1981). The plaintiff may satisfy this latter burden either:

(1) directly, by producing evidence that a discriminatory reason more likely motivated the employer; or

(2) indirectly, by showing that the employer's proffered explanation is unworthy of credence, and that intentional discrimination actually motivated the employer's actions.

*Meiri, supra,* 759 F.2d at 997. However, mere conclusory allegations of discrimination are insufficient to meet this burden. *Id.* at 998.

### a. *The prima facie case*

In order to establish a *prima facie* case under the facts of this case (namely, reduction in position, not discharge), the plaintiff must present evidence that:

(1) he is a member of a protected class;

(2) he was qualified for the position or positions in which he worked;

(3) he was subject to adverse employment decisions; and

(4) either the position remained open or he was replaced by someone not a member of his protected class.

*De la Cruz v. N.Y. City Human Resources Administration Dep't of Soc. Serv.,* 82 F.3d 16, 20 (2d Cir.1996). Title VII forbids employment decisions in which the race of the adversely affected employee is a substantial factor. In a case such as the present one, where the plaintiff's evidence is entirely circumstantial, the pertinent question is whether the plaintiff's *prima facie* case contains evidence sufficient to permit the trier of fact to draw an inference that the prohibited motive was a substantial factor in the adverse employment decision. *See Burger v. New York Institute of Technology,* 94 F.3d 830, 834 (2d Cir.1996). The threshold of evidence that the plaintiff must meet to establish a *prima facie* case is low. *De la Cruz,* 82 F.3d at 20. Once the plaintiff establishes a prima facie case, the question of whether the plaintiff has been harmed by the transfer is a question of fact for the jury. *Id.* at 21.

The plaintiff alleges that his numerous transferrals were attempts by the defendant to demoralize him into resigning from the company. In this regard, the plaintiff's skill code change in 1991, the RIF in 1992, the RIF in 1993, and the transfers can be viewed as continuous discrimination practices by the defendant, according to the plaintiff.

The defendant does not contest that the plaintiff belongs to a class of protected persons and thus, the first element of the plaintiff's prima facie case is satisfied.

■ To satisfy the second element, the plaintiff need only demonstrate that he "possesses the basic skills necessary for performance of [the] job." *Powell v. Syracuse Univ.,* 580 F.2d 1150, 1155 (2d Cir.), *cert. denied,* 439 U.S. 984, 99 S.Ct. 576, 58 L.Ed.2d 656 (1978). The plaintiff need not demonstrate that his performance was flawless or superior. *See de la Cruz, supra,* 82 F.3d at 20. Regarding the plaintiff's alleged demotion from the position of program representative for machine parts to the position of senior program coordinator, the Court cannot glean the plaintiff's qualifications.

The plaintiff's May, 1991 and May, 1992 evaluations of his performance as a customer interface representative for the machine parts department were generally positive. For both the May, 1991 and May, 1992 performance evaluations completed, the plaintiff was given a 300 out of a possible rating of 500, with 500 denoting outstanding. A rating of 300 denotes that the plaintiff met expectations of the supervisor completing the evaluation. The Court finds that the plaintiff was qualified to fill the position of customer interface representative for machine parts which

position the plaintiff held in January, 1991 through in or about February, 1991.

Regarding the plaintiff's performance evaluation dated July 16, 1993, the plaintiff received a rating of 100 out of a possible rating of 500, or denotes a rating of "unsatisfactory". In addition, this performance evaluation detailed the plaintiff's performance problems including lack of concentration, wandering away from his desk for extended periods of time, and making too many personal calls. Further, the plaintiff took 13 and one-half days off during a 90 day period and did not follow office procedure regarding advance notification. It was recommended in this evaluation that the plaintiff be transferred to a position that is "not as complex as Property Management which requires self-motivation and the ability to work alone." This is a close case as to this element. The Court gives all favorable inferences to the plaintiff and finds that he has established, at least *prima facie* that he is qualified and was qualified for the positions worked, as well as for the position he assumed in the property management department.

■ As to the third element of plaintiff's *prima facie* case, the defendant maintains that the plaintiff suffered no unfavorable employment action. The defendant emphasizes that although the plaintiff was selected for RIF in early 1993, he was not laid off. Furthermore, when the plaintiff was "demoted" to the position of senior program coordinator and his skill code changed from exempt to non-exempt status, the plaintiff's salary and benefits did not change. The plaintiff did not lose any vacation eligibility or vacation pay, sick time or leave days, nor did his skill code change affect his ability to participate in profit sharing and pension plans. Therefore, the defendant suggests that the plaintiff has not suffered any adverse employment action. The Court finds this argument unavailing.

Title VII prohibits employers from discriminating with respect to "compensation, terms, conditions, or privileges of employment" on account of an individual's race, color, religion, sex, or national origin. 42 U.S.C. § 2000e–2(a)(1). In *de la Cruz, supra,* the plaintiff, a caseworker in the Adoption Unit of the New York City Human Resources Administration Department of Social Services, was transferred to the Foster Care Unit. However, the plaintiff retained his civil service rank and he did not suffer a reduction in salary. The plaintiff asserted that the defendant moved him from an "elite" division, which position was prestigious and provided an opportunity for advancement, to a less prestigious unit with little opportunity for professional growth. The defendant argued that the two units were equal in status and therefore, did not constitute a legally cognizable adverse action. The Second Circuit, reaffirming that the protections afforded under Title VII are not limited to "instances of discrimination in pecuniary emoluments", held that the third element of the plaintiff's *prima facie* case was satisfied since the plaintiff's transfer altered the terms and conditions of his employment in a negative way. *De la Cruz,* 82 F.2d at 21.

Similarly, the plaintiff in this case maintains that as a result of his 1991 skill code change from exempt to non-exempt status, he became susceptible for selection for a RIF and prevented the plaintiff from any further advancements. In addition, the plaintiff's skill code change affected his future raises for an undetermined amount of time. Under the standard enunciated in *de la Cruz, supra,* this Court concludes that the plaintiff has been subjected to adverse employment decisions and thus, has presented sufficient evidence to satisfy the third element of his *prima facie* case.

■ As to the fourth element of the plaintiff's prima facie case, the Court finds that the plaintiff has not presented any evidence that his position remained open or that he was replaced by someone not a member of his class. The plaintiff alleges that James Cappelluto, the son of his manager, John Cappelluto, replaced him when he was allegedly demoted from the position of senior program coordinator to a position in the Property Management department. James Cappelluto is Caucasian. However, the plaintiff has presented no evidence to support this allegation. Nor did the plaintiff offer any evidence to dispute the statement in John Capelluto's affidavit submitted in

support of defendant's motion that the plaintiff's job duties were distributed among the remaining people in the department. Moreover, the plaintiff's allegation tends to support a theory of nepotism rather than one of racial discrimination. Further undermining the plaintiff's theory is John Cappelluto's affidavit in which he stated that his son, James Cappelluto, was RIF'd on August 6, 1993. In sum, the plaintiff does not offer any evidence to create a genuine issue of material fact. Therefore, as a result of a failure to prove the fourth element or provide evidence of any racial discrimination, the plaintiff has not met his burden of proof as to his *prima facie* case.

### b. *Pretext*

■ Even if the plaintiff would have been able to prove his *prima facie* case, the Court finds that the defendant offers legitimate and non-discriminatory explanations for the plaintiff's skill code change, his selection for RIF and the transfers. Under the applicable law, the plaintiff must counter defendant's explanations with sufficient evidence to support a rational finding that the legitimate and nondiscriminatory reasons proffered by the defendant were false or pretextual and that race discrimination was the real motivating factor. *See Van Zant, supra,* 80 F.3d at 714 (grant of summary judgment affirmed where insufficient evidence of pretext existed). The plaintiff contends that the Second Circuit's requirement that a plaintiff prove pretext to defeat a motion for summary judgment is erroneous and inconsistent with the decisions rendered by the Supreme Court. However, this Court is bound by the precedent set by the Second Circuit and therefore, this contention by the plaintiff must be rejected.

The defendant contends that the plaintiff's skill code was changed to accurately reflect the work he was performing. The defendant denies disparate treatment of the plaintiff. The plaintiff does not dispute that the skill codes of other Caucasian employees were also adjusted. The Court finds no evidence of disparate treatment in this case.

In addition, the defendant asserts that the plaintiff's selection for RIF was due to plaintiff's relative rank in his department. The plaintiff was ranked eighth out of ten individuals. The two persons ranked below the plaintiff were Caucasian, and were laid off during a RIF in September, 1992. Indeed, the individual rated directly above the plaintiff was also Caucasian, and was laid off in June, 1993. Once again, the plaintiff does not present any evidence to dispute the defendant's proffered non-discriminatory explanations. Nor does the plaintiff dispute the downsizing of the defendant's Long Island facilities, or the resulting well-publicized enormous number of layoffs. From the evidence presented by the defendant, the Court concludes that the criteria for selection of individuals for RIF treatment was evenhanded and thus, the plaintiff has not established a pretext for racial discrimination. *See Grant v. Bethlehem Steel Corp.,* 635 F.2d 1007, 1014–15 (2d Cir.1980) (pretext may be established where policy was not applied evenly).

Third, the defendant attempted to match the plaintiff's abilities with available job positions. The plaintiff was transferred to the Sealant Laboratory due to his poor performance evaluation while employed in the Property Management department. The plaintiff maintains that the poor evaluations were a pretext for race discrimination. However, the plaintiff fails to cite any evidence that the performance evaluations were discriminatory or were undeserved for any other reason. "An employee's opinion that a performance review was unfair, supported only by ... [his] own conclusory statements to that effect, cannot bootstrap her claims into a Title VII claim of discrimination." *Reilly v. Metro–North Commuter R.R. Co.,* No. 93 Civ. 7317, 1996 WL 665620, at *9 (S.D.N.Y. Nov. 15, 1996). Nor can prior good evaluations of the plaintiff's work performance alone establish that later unsatisfactory evaluations are pretext for unlawful discrimination. *See Shabat v. Blue Cross Blue Shield of Rochester Area,* 925 F.Supp. 977, 988 (W.D.N.Y.1996); *Orisek v. American Institute of Aeronautics and Astronautics,* 938 F.Supp. 185, 191 (S.D.N.Y.1996).

The plaintiff's affidavit contains conclusory allegations and hearsay, neither of which is sufficient to create a genuine issue of materi-

al .act. The plaintiff maintains that circumstantial evidence directs the conclusion that the legitimate and non-discriminatory reasons proffered by the defendant are pretextual. The plaintiff claims in his affidavit that he felt "racial tension" from Vreeland while he was under Vreeland's supervision. However, this unsupported allegation is insufficient to create a genuine issue of material fact. There is no evidence to support the plaintiff's subjective feeling of "racial tension." The plaintiff further contends that during 1992, Vreeland, his supervisor, ate lunch with a group of supervisors, all of whom were Caucasian. However, the plaintiff was not employed in a supervisory capacity in 1992 and therefore, the plaintiff's allegation that he was never invited or made to feel welcome at a supervisors' luncheon, does not create an issue of fact.

Finally, the plaintiff cites statements made to him by co-workers confirming the plaintiff's beliefs that his transfers were motivated by race discrimination. The plaintiff claims that in or about August, 1993, James Capelluto approached him and stated, "Marvin I'm leaving. I'm going to Florida and I want you to know I had nothing to do with what they were trying to do to you." The plaintiff further claims that Bob Smith, the plaintiff's former supervisor approached him in or about November, 1993 and stated, "they [Defendant] really tried to screw you." Finally, the plaintiff claims that in or about July, 1994, John Hulse, another former supervisor, stated, "Marvin, I didn't like any of it, but I couldn't take you with me and I knew that they were going to try to screw you." The plaintiff claims that he went on to state, "I know that John Capelluto wanted to give his son your job." Not only are these statements hearsay, but standing alone, assuming they are admissible, they fail to provide any evidence of race discrimination. The Court notes that the plaintiff did not produce one affidavit or even a statement by a non-party validating the assertions set forth in his affidavit.

The plaintiff has failed to demonstrate through admissible evidence that race discrimination was the more likely motive or that the defendant's three legitimate, non-

discriminatory reasons are unworthy of credence. The Court finds that the non-discriminatory reasons advanced by the defendants are the true reasons, as a matter of law. Therefore, the defendant's motion for summary judgment dismissing the plaintiff's claims arising under Title VII and the New York Human Rights Law, is granted.

### iii.  *Section 1981 claim*

██ The defendant also moves for summary judgment on the plaintiff's claim brought pursuant to 42 U.S.C. § 1981. Section 1981 provides:

(a) Statement of equal rights

All persons ... shall have the same right ... *to make and enforce contracts,* to sue, be parties, give evidence, and to the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens ...

(b) "Make and enforce contracts" defined

For the purposes of this section, the term "make and enforce contracts" includes the making, performance, modification, and termination of contracts, and the enjoyment of all benefits, privileges, terms, and conditions of the contractual relationship.

42 U.S.C. § 1981, Pub.L. 102–166, 105 Stat. 1071, Nov. 21, 1991.

The defendant contends that the plaintiff's Section 1981 claim should be dismissed because no underlying contract exists upon which to base the plaintiff's claims. The Court agrees.

By its very terms, Section 1981 governs contractual relationships. The Second Circuit has repeatedly recognized that Section 1981 requires both evidence of intentional discrimination "and that this discrimination interfered with a contractual relationship." *Murray v. National Broadcasting Co.,* 844 F.2d 988, 995 (2d Cir.1988) (citing *Runyon v. McCrary,* 427 U.S. 160, 170–71, 96 S.Ct. 2586, 2594–95, 49 L.Ed.2d 415 (1976)); *Krulik v. Board of Educ.,* 781 F.2d 15, 23 (2d Cir.1986). In *Askew v. May Merchandising Corp.,* 87 CIV. 7835, 1991 WL 24390, at *6 (S.D.N.Y. Feb. 29, 1991), the district court

applied this standard and granted the defendants' motion for summary judgment dismissing the plaintiff's Section 1981 claims based on his failure to establish the necessary contractual relationship as the plaintiff was an at-will employee. *See also Moscowitz v. Brown,* 850 F.Supp. 1185, 1192 (S.D.N.Y. 1994) (dismissing Section 1981 claim of an at-will employee because there was no underlying contractual relationship upon which to base a claim).

In addition, to establish a claim under Section 1981, the plaintiff must allege facts in support of the following elements: (1) the plaintiff is a member of a racial minority; (2) an intent to discriminate on the basis of race by the defendant; and (3) the discrimination concerned one or more of the activities enumerated in the statute. *See Mian v. Donaldson, Lufkin & Jenrette Securities Corp.,* 7 F.3d 1085, 1087 (2d Cir.1993). The essential element of a Section 1981 claim is that the discrimination occurred as a result of the plaintiff's race. *See id.* at 1088. In the present case, the plaintiff proffered no direct or circumstantial evidence of race discrimination.

Applying these standards, the Court must dismiss the plaintiff's Section 1981 claims. The plaintiff has not established the existence of a contractual relationship with the defendant sufficient to support a Section 1981 cause of action and produced no evidence of racial discrimination. As a result, the Section 1981 claim cannot be sustained. Accordingly, the defendants' motion for summary judgment dismissing the plaintiff's Section 1981 claim is granted.

## C. *Sanctions under Fed.R.Civ.P. 56(g)*

The defendant seeks reasonable costs, including attorneys fees, incurred as a result of its motion to strike the plaintiff's affidavit submitted in opposition to the defendant's motion for summary judgment, pursuant to Fed.R.Civ.P. 56(g). The defendant asserts that "Plaintiff's current counsel has repeatedly been advised that the positions Plaintiff seeks to advance could not be supported in light of Plaintiff's deposition testimony and other record evidence in this case." The plaintiff counters by maintaining that

neither he nor his current attorney has ever reviewed the plaintiff's deposition testimony prior to being served with the instant motion for summary judgment. The plaintiff's current attorney claims that the "[p]laintiff was of limited means and had already expended more than he had on litigation costs, a great deal of which was to defend against Defendant's motion to have ... [plaintiff's] prior counsel disqualified, and that if ... [the defendant was] sincere in wishing to resolve this matter amicably, they would supply ... [plaintiff's counsel] with a copy of the transcript." The Court assumes that the failure to provide a copy of the plaintiff's deposition transcript was done by inadvertence.

Fed.R.Civ.P. 56(g) provides:

Should it appear to the satisfaction of the court at any time that any of the affidavits presented pursuant to this rule are presented in bad faith or solely for the purpose of delay, the court shall forthwith order the party employing them to pay to the other party the amount of the reasonable expenses which the filing of the affidavits caused the other party to incur, including reasonable attorney's fees, and any offending party or attorney may be adjudged guilty of contempt.

There is little case law applying Rule 56(g). In the rare instances in which Rule 56(g) sanctions have been granted, the conduct has been egregious. *See e.g., SMS Assoc. v. Clay,* 868 F.Supp. 337 (D.D.C.1994), *aff'd,* 70 F.3d 638 (D.C.Cir.1995) (Rule 56(g) sanctions awarded where litigant engaged in "dilatory tactics expressly designed to prolong ... already unduly protracted litigation" in case which had been going on for over 10 years); *Alart Assocs., Inc. v. Aptaker,* 402 F.2d 779 (2d Cir.1968) (Rule 56(g) sanctions imposed where litigant reasserted substantially the same grounds for summary judgment after the court had already twice rejected the theory). Merely because the defendant believes that the plaintiff's arguments are without merit does not furnish grounds for the imposition of sanctions under this Rule. The Court finds that Mr. Moorer's affidavit submitted in support of plaintiff's opposition to defendant's motion for summary judgment was not submitted in bad faith and therefore,

sanctions pursuant to Fed.R.Civ.P. 56(g) are not warranted in the present case.

## III. CONCLUSION

After receiving the submissions of both parties and hearing oral argument on this matter, and for the reasons set forth above, it is hereby

**ORDERED**, that the defendant's motion for summary judgment pursuant to Fed. R.Civ.P. 56 is granted; it is further

**ORDERED**, that the defendant's motion to strike portions of plaintiff Marvin Moorer's affidavit submitted in opposition of defendant's motion to dismiss is denied; it is further

**ORDERED**, that the defendant's motion for sanctions pursuant to Fed.R.Civ.P. 56(g) is denied; and it is further

**ORDERED**, that the complaint in this action is dismissed in its entirety.

The Clerk of the Court is advised that this Order closes the case.

**SO ORDERED.**