Daniel R. MEACHUM

v.

**TEMPLE UNIVERSITY—OF THE COMMONWEALTH SYSTEM OF HIGHER EDUCATION.**

No. Civ.A. 97–1629.

United States District Court, E.D. Pennsylvania.

March 25, 1999.

534

Timothy A. Gallogly, Sirlin Gallogly & Lesser, P.C., Philadelphia, PA, for plaintiff.

John B. Langel, David S. Fryman, Gayle A. Stein, Ballard, Spahr, Andrews and Ingersoll, Phila, PA, for defendant.

*OPINION*

POLLAK, District Judge.

This is an employment discrimination case against a university in which plaintiff alleges causes of action under both Title VII and 42 U.S.C. § 1981. Presently before this court is defendant's motion for summary judgment.

## I.

The facts—viewed in the light most favorable to Meachum—may be summarized as follows. Daniel Meachum, an African American male, was hired by Temple as Associate University Counsel in August 1989. In his nearly six years as Associate University Counsel, Meachum was the in-house counsel chiefly responsible for litigation. His litigation duties included representation of the university in state and federal courts and supervisory responsibility for cases being litigated by outside counsel. While his work concentrated on litigation, he also wrote university policies, attended board of trustee meetings, and advised executive officers of the university on legal matters. During his employment, Meachum consistently received merit-based pay increases of 3.8% or more. The University Counsel, George Moore, never informed Meachum that his work was deficient or gave him a negative review.

Meachum was fired on June 9, 1995. His termination letter did not give reasons for the firing. He was subsequently informed by Moore, his supervisor, that Moore had decided to eliminate Meachum's position in order to transfer litigation responsibilities to outside counsel as part of a university-wide reduction in the number of employees. Though Moore could have chosen to terminate the employment of any of the other Associate University Counsel—none of whom were African American, and four of whom had less seniority than Meachum—Moore chose to eliminate Meachum. The cases on which Meachum was then working were reassigned either to Moore himself or to outside counsel with support from the office of the University Counsel.

## II.

Summary judgment may be entered if "the pleadings, deposition, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). "An issue is 'genuine' only if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Hankins v. Temple Univ.*, 829 F.2d 437, 440 (3d Cir.1987) (*citing Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–49, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986)).

## III.

Temple claims that summary judgment on the Title VII claim is justified for two independent reasons: (1) Meachum has failed to demonstrate the existence of a prima facie case; and (2) assuming that Meachum has demonstrated the existence of a prima facie case, Meachum has not carried his burden of casting reasonable doubt on the legitimate non-discriminatory explanations for the employment decision that Temple has averred.

## A.

■ "In a Title VII case such as this one involving a reduction in force, in order to make out a prima facie case the plaintiff must show that (1) she belonged to a protected class, (2) she was qualified for the position from which she was terminated, (3) she was terminated and (4) persons outside of the protected class were retained." *In Re Carnegie Center Associates*, 129 F.3d 290, 294–95 (3d Cir.1997) (*citing Armbruster v. Unisys Corp.*, 32 F.3d 768, 777 (3d Cir.1994)). Temple admits that Meachum is a member of a protected class and was discharged. Further, it acknowledges, albeit "solely for the prima facie case portion of the analysis," that Meachum was qualified for the position. Def.Br. at 27 n. 20. Defendant claims that, because Moore "transferred [Meachum's] active case load to other African–American attorneys," Meachum cannot satisfy the fourth prong of the prima facie case. Def.Br. at 27. The "other African–American attorneys" to whom defendant refers are two attorneys who work for law

firms that Temple has retained to assist it with litigation matters.

██ ·In essence, Temple claims that this case should be governed not by the prima facie case requirements that apply to reductions in force, but to the prima facie test requirements that apply when an employee is fired and then replaced by another employee. In the latter situation,

> a Title VII plaintiff must show (1) that she is a member of a protected class, (2) she was qualified for the position, (3) she was discharged, and (4) the position was ultimately filled by a person not of the protected class.

*Sheridan v. E.I. DuPont de Nemours and Co.,* 100 F.3d 1061, 1066 n. 5 (3d Cir.1996).[1]

While it appears that the University Counsel transferred some of Meachum's casework to outside counsel employing African American attorneys, it is not clear why a transfer of work should be deemed to constitute a replacement of the employee, and should therefore make appropriate the use of the 'firing-and-hiring' prima facie case, rather than the 'reduction in force' prima facie case. Defense counsel has not pointed to any case that has held that an employer's termination of an employee followed by a transfer of the former employee's work to an outside contractor should be read as replacement of that em-

ployee. Nor has this court found such a case.[1]

Because this appears to be a question of first impression[2], it is appropriate to assess the defendant's contention in light of the purpose that underlies the requirement that a plaintiff come foreword with a prima facie case. "The prima facie case," the Supreme Court has found, "serves an important function in the litigation: it eliminates the most common nondiscriminatory reasons for the plaintiff's rejection." *Texas Department of Community Affairs v. Burdine,* 450 U.S. 248, 253–54, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981). An employer who has declined to hire an applicant for employment but has subsequently hired a member of the applicant's protected class defeats the applicant's claim because the employer is deemed to have demonstrated that the applicant was rejected for reasons unrelated to the applicant's membership in the protected class.

██ I am not persuaded, however, that outsourcing the work of an employee to contractors of the same race conclusively demonstrates that the employee was rejected for reasons unrelated to his race. It is not wholly implausible to posit a scenario in which an employer discharges an employee for reasons in which race plays a part, and transfers duties previous-

---

1. Whether the fourth step in the *Sheridan* formula is essential seems open to question. *See Simpson v. Kay Jewelers,* 142 F.3d 639, 649–51 (3d Cir.1998) (concurring opinion).

1. In *Mitchell v. Worldwide Underwriters Ins. Co.,* 967 F.2d 565 (11th Cir.1992), the Eleventh Circuit considered an age discrimination claim brought by a plaintiff who had been fired, whose position had been terminated, and whose duties had been reassigned to an outside contractor that employed persons younger than the plaintiff to do the plaintiff's former work.· The court analyzed the plaintiff's claim under two prima facie tests. First, it considered whether he had established a traditional prima facie test, which required him to show that he had been "replaced with a person outside the protected group," *id.* at 566. Because the court did not consider outsourcing to constitute replacement, it held

that Mitchell had not established the fourth prong of that prima facie case. *Id.* It then turned to a prima facie test that the Eleventh Circuit uses when a position has been eliminated or a workforce has been reduced, and asked whether Mitchell was qualified for another position that was open at the time of his termination. *Id.* at 567. Finding the evidence thin and conflicting, the circuit court vacated the district court's grant of summary judgment and remanded the case.

2. *Cf. Mitchell, supra.* Unlike *Mitchell* — which raised the question whether a plaintiff could claim replacement by an outside contractor—this case raises the question whether a plaintiff is barred from claiming a reduction in force by virtue of the fact that the subcontractors who have assumed his former responsibilities are members of the same protected class as the plaintiff.

ly assumed by that employee to an independent contractor of the same race who is external to the work place. I thus find that, even where an employer discharges an employee who belongs to a protected class and subsequently contracts with an external contractor who is a member of the same protected class to perform the former employee's duties, a reduction-in-force claim is properly analyzed under the prima facie case standard articulated in *In Re Carnegie Center Associates.*

■ As noted above, the teaching of *In re Carnegie Center Associates* is that, to establish a prima facie case in a reduction-in-force setting, a plaintiff must show that, concurrent with his discharge from a position for which he was qualified, "persons outside of the protected class were retained." 129 F.3d at 295. One makes that showing by demonstrating that one "was laid off from a job for which he was qualified while others not in the protected class were treated more favorably." *Massarsky v. General Motors Corp.,* 706 F.2d 111, 118 (3d Cir.1983). Meachum has accomplished this by alleging (what, at least at this stage, has not been controverted) that several other Associate University Counsel—all of whom were white—were not discharged. Four of those who were not discharged had less seniority than Meachum, making it appear that they "were treated more favorably" than Meachum.

Temple argues that it is incorrect to characterize the other Associate University Counsel as having been treated more favorably, because Meachum's job was not the same as the other Associate University Counsel. While the other Associate University Counsel "[a]ll had significant and daily counseling responsibilities," Temple contends, "[p]laintiff did not." Def.Br. at 30. Meachum contests this bifurcated characterization, pointing to his counseling

of several university divisions and his various transactional tasks. Pl.Br. at 9–10 (*citing* Temple Ex. C at 128–49).

Employees in professional or executive positions may be more likely than their counterparts in blue-collar positions to occupy positions that, though similar in title and job description, become differentiated due to the skills and talents of the individual employees.[3] The role of a court at this threshold stage of analysis is not to determine the subtle ways in which plaintiff's professional position may have differed from the positions of other attorneys with the same title working in the same office. Because the plaintiff's burden in establishing a prima facie case is not "onerous," *Burdine,* 450 U.S. at 253, 101 S.Ct. 1089, I find that Meachum has satisfied his prima facie burden of coming foreword with evidence suggesting that the individuals whom Temple chose to retain—all of whom were attorneys and all of whom had the title "Associate University Counsel"—were "treated more favorably" than Meachum. Meachum has thus established his prima facie case.

B.

Once "the plaintiff succeeds in proving the prima facie case, the burden shifts to the defendant 'to articulate some legitimate, non-discriminatory reason'" for the adverse employment decision. *Texas Department of Community Affairs v. Burdine,* 450 U.S. 248, 253, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981) (*citing McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 802, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973)). In order to satisfy its burden of production, the defendant need only "introduc[e] evidence which, taken as true, would permit the conclusion that there was a nondiscriminatory reason for the unfavorable employment decision." *Fuentes v. Perskie,* 32 F.3d 759, 763 (3d Cir.1994).

**3.** Individualization of professional or executive positions does not provide employers with the argument that every professional or executive position is sui generis. Such an argument would permit the termination of an

individual under the guise of eliminating a position, since an employer could claim that retained individuals were not "treated more favorably" because they did not occupy the same position as the terminated individual.

Temple has articulated two legitimate, nondiscriminatory reasons for its decision to discharge Meachum. First, it contends that Moore believed that Meachum's job performance had "deteriorated" so far "that it was having a detrimental effect on the image and morale of the [office of the University Counsel] and [Temple] University and was raising the real possibility that more severe sanctions and default judgments would be entered against Temple." Def.Br. at 32–33. Second, Temple contends that "Moore also believed that by out-sourcing plaintiff's litigation responsibilities he could achieve a smooth-functioning, more cost-efficient litigation management system." Def.Br. at 33. Meachum does not contest that Temple has satisfied its burden of articulating legitimate nondiscriminatory reasons for his discharge.

## C.

■ The burden thus shifts again to Meachum. "[T]o defeat summary judgment when the defendant answers the plaintiff's prima facie case with legitimate, non-discriminatory reasons for its action, the plaintiff must point to some evidence, direct or circumstantial, from which a factfinder could reasonably either (1) disbelieve the employer's articulated legitimate reasons; or (2) believe that an invidious discriminatory reason was more likely than not a motivating or determinative cause of the employer's action." *Fuentes*, 32 F.3d at 764. Meachum has not produced any independent evidence of discrimination, but presents several ripostes to Temple's articulated nondiscriminatory explanations.

■ Meachum makes three arguments that he believes cast doubt on Temple's claim that Meachum performed his duties at a level below that of his peers. First, he asserts that the University has not presented documentation supporting its claim. Second, Meachum asserts that he consistently received merit raises at or near the maximum permissible amount. *See* Meachum Aff. ¶ 24. Third, he argues that Moore's experience as a manager of attorneys makes it highly unlikely that Moore would have permitted Meachum to practice what Moore considered substandard lawyering for the length of time that Moore claims to have been dissatisfied without ever reprimanding Meachum or suggesting ways in which Meachum could improve.

Meachum's second argument presents a reason why a factfinder might reasonably disbelieve Temple's asserted nondiscriminatory reason for the firing. Assuming that, as alleged, Moore consistently authorized merit pay increases for Meachum, the award of pay increases apparently keyed to meritorious performance would seem to be in tension with Temple's assertion that Meachum was performing his job in a manner below Moore's expectations. While it may be that Temple will present evidence at trial diminishing the impact of the evidence of Meachum's merit pay increases—e.g., evidence that other employees in the office regularly received even higher merit pay increases—Meachum has satisfied his burden of coming foreword with evidence casting doubt on Temple's assertion that Meachum's poor performance triggered his release.[4]

4. Unlike his second argument, Meachum's first argument does not provide evidence that the defendant's asserted nondiscriminatory explanation for the firing was pretextual. Contrary to Meachum's assertion that Temple has not provided documentation supporting its claims of poor performance, the University has identified several instances in which "very serious complaints" were received from persons outside the office of the University Counsel concerning Meachum's lack of responsiveness, untimeliness, and lack of professionalism. *See* Ex. B at 35–38 (Moore deposition). Plaintiff attacks that evidentiary basis for Temple's nondiscriminatory explanation by asserting that Moore also received complaints directed at other Associate University Counsel. *See* Ex. C at 156–57 (Meachum deposition). In response, Moore claims that those complaints—which did not relate to perceived lacks of responsiveness, timeliness, or professionalism—did not "begin[ ] to approach the level of complaints" concerning Meachum. Ex. J at ¶ 8 (Moore affidavit). Meachum has adduced no admissible evi-

It is not enough, however, that Meachum has discredited one of Temple's proffered explanations for his firing. "[T]o avoid summary judgment, the plaintiff's evidence rebutting the employer's proffered legitimate reasons must allow a factfinder reasonably to infer that *each* of the employer's proffered nondiscriminatory reasons" was pretextual. *Fuentes*, 32 F.3d at 764 (emphasis in original). Meachum must also cast sufficient doubt on Temple's second proffered nondiscriminatory reason for terminating him—that the office of the University Counsel could be made more efficient by outsourcing litigation, and that given the outsourcing there was no longer a job for Meachum[5]—for a factfinder reasonably to infer that the proffer is pretextual. The question is "whether the reorganization was an attempt to conceal discrimination." *Waldron v. SL Industries, Inc.*, 56 F.3d 491 (3d Cir.1995).

Temple's second proffer asserts that outsourcing litigation would make the office more efficient and that, in Moore's view, it made more sense to eliminate Meachum's job than to reassign Meachum to non-litigation duties.[6] Meachum argues that several of Moore's omissions cast doubt on the assertion that outsourcing litigation would make the office more efficient. He notes that Moore—an experienced attorney and administrator—did not determine in advance what, if any, savings would be realized by outsourcing litigation; Moore did not undertake a cost study, for instance, or prepare a report. Moreover, Meachum points out, Moore did not discuss potential arrangements with outside counsel before firing Meachum. Taken together, those facts paint a picture that a reasonable factfinder could, arguably, read to suggest pretext.

Meachum has thus presented some evidence that would allow a factfinder reasonably to infer that both of the employer's proffered legitimate reasons for his firing were pretextual.

In sum, summary judgment on Meachum's Title VII claim is inappropriate.

## IV.

■ Temple argues that Meachum does not have a valid claim under 42 U.S.C. § 1981 for three reasons: (1) Meachum has adduced no evidence showing that Temple maintained a "custom or policy" of discrimination; (2) 42 U.S.C. § 1981 does not provide an independent cause of action against a state actor;[7] and (3) Meachum

dence suggesting that complaints directed at other Associate University Counsel were as serious as complaints directed at him.

Meachum's third claim—that Moore's long experience as a manager of attorneys makes it unlikely that he would, without comment or criticism, have permitted substandard lawyering for as long as Moore claims that it occurred—presents a closer question. Because I find above that Meachum has satisfied his burden of coming foreword with evidence that a reasonable factfinder could interpret to suggest that Temple's nondiscriminatory explanation is pretextual, I need not determine whether an individual with long experience as a manager of attorneys can reasonably be presumed to have approved of lawyering that he did not criticize.

**5.** As Temple puts it, "Mr. Moore also believed that by out-sourcing plaintiff's litigation responsibilities he could achieve a smooth-functioning, more cost-efficient litigation management system. Because plaintiff was engaged almost exclusively in litigation and had undertaken no counseling responsibilities, there no longer was a role for plaintiff in the Office." Def.Br. at 33.

**6.** *See id.* ("Because plaintiff was engaged almost exclusively in litigation and had undertaken no counseling responsibilities, there no longer was a role for plaintiff in the Office."). *See also* Def. Reply Br. at 5 ("Because plaintiff performed the work that would be sent out, his position was the logical one to eliminate—the work he performed was going away."); *id.* ("Plaintiff did not have the significant counseling relationships that the other AUCs in the Office had, and he had an abysmal track record with respect to timeliness and responsiveness, so it made no sense to lay off some other AUC in the Office instead of him.").

**7.** In *Jett v. Dallas Independent Sch. Dist.*, 491 U.S. 701, 109 S.Ct. 2702, 105 L.Ed.2d 598, (1989), Justice O'Connor, writing for the 5–4

did not satisfy the threshold requirement of a contractual relationship with the defendant.

Meachum does not contest the requirement of a showing of "custom or policy," but argues that "Moore's decision to terminate plaintiff constituted a specific and one-time decision by a 'final policymaker' based upon racially discriminatory motives." Pl.Br. at 33. In making that argument, Meachum relies on *Pembaur v. City of Cincinnati*, 475 U.S. 469, 480, 106 S.Ct. 1292, 89 L.Ed.2d 452 (1986), which held that a decision by a single government policymaker on a single occasion could, under appropriate circumstances, constitute government policy. The Third Circuit has determined that a plaintiff alleging a violation of 42 U.S.C. § 1983 "must show that an official who has the power to make policy is responsible for either the affirmative proclamation of a policy or acquiescence in a well-settled custom." *Bielevicz*

*v. Dubinon*, 915 F.2d 845, 850 (3d Cir. 1990). "In determining whether an official holds such policymaking authority, courts are to consider whether an official has 'final, unreviewable discretion to make a decision or take an action.'" *Blanche Road Corp. v. Bensalem Township*, 57 F.3d 253, 269 n. 16 (3d Cir.1995) (*quoting Andrews v. City of Philadelphia*, 895 F.2d 1469, 1481 (3d Cir.1990)).

Temple University Policy Statement I–29 (June 1, 1995), signed by President Peter J. Liacouras, states that "[f]inal administrative decisions involving the layoff of specific personnel within administrative units … will be approved by the senior officer (EVP, Provost, SrVP–HSC) with whom the final appeal is also lodged." *Id.* at ¶ 1. Temple asserts that Moore "needed the University's review and approval" and points to several pieces of deposition testimony corroborating this assertion.[8] Meachum argues that the review conduct-

majority, held that the express 'action at law' provided by § 1983 for the 'deprivation of any rights, privileges, or immunities secured by the Constitution and laws', provides the exclusive federal damages remedy for the violation of the rights guaranteed by § 1981 when the claim is pressed against a state actor.

*Id.* at 735, 109 S.Ct. 2702. The Court also rejected the petitioner's contention that "the doctrine of *respondeat superior* is available against a municipality" under § 1981, *id.*, finding that a plaintiff seeking redress under § 1981 must show that the alleged misconduct of a government employee "was caused by a custom or policy within the meaning of *Monell* and subsequent cases," *id.* at 736, 109 S.Ct. 2702 (*citing Monell v. New York City Dept. of Social Services*, 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978)).

In the Civil Rights Act of 1991, Congress denominated the prior text of § 1981 as subsection (a) and added subsections (b) and (c). Subsection (c), relevant to this case, provides that "[t]he rights protected by [§ 1981] are protected against impairment by nongovernmental discrimination and impairment under color of State law."

While commentators have expressed some uncertainty as to whether the *Monell* "custom or policy" requirement that *Jett* read into § 1981 survived the 1991 amendments, *see* Sheldon H. Nahmod, 1 Civil Rights and Civil Liberties Litigation (Supp.1995) § 3.20; Robert Belton, The Unfinished Agenda of the Civil

Rights Act of 1991, 45 Rutgers L.Rev. 921, 956 (1993), no federal court appears to have concluded that the 1991 amendments eliminated the *Monell* requirement from § 1981 actions. Several courts, including those that disagree whether § 1981(c) implies a cause of action, *see* note 9, *infra*, have concluded that a plaintiff seeking to subject a government entity to liability for the acts of its employee must still prove a governmental "custom or policy." *E.g., Philippeaux v. North Central Bronx Hosp.*, 871 F.Supp. 640, 653–56 (S.D.N.Y. 1994); *Federation of African American Contractors v. City of Oakland*, 96 F.3d 1204, 1214–15 (9th Cir.1996); *Dennis v. County of Fairfax*, 55 F.3d 151, 156 n. 1 (4th Cir.1995); *Johnakin v. Philadelphia*, 1996 WL 18821 (E.D.Pa. Jan.18, 1996).

8. Temple states in its brief:

As Mr. Moore made the decision to outsource the University's litigation and lay off plaintiff … he needed the University's review and approval. (White Dep., Ex. M at 20–21, 26–28, 47–48; Moore Dep., Ex. B at 90–92.) Specifically, James S. White, the Executive Vice President of the University, required each budget unit head to submit proposed layoff lists for their [sic] unit to C. Robert Harrington, then Associate Vice President of Personnel and Administration for review and approval. (White Dep., Ex. M at 20–21, 46–49, 68.) Mr. Harrington studied the lists, reviewed the union impli-

ed by the individuals vested with final decision making power was not "meaningful," Pl.Br. at 25, 34, and that "they did not make any attempt to evaluate the decision to layoff [sic] Mr. Meachum as opposed to laying off one of the other attorneys," *id.* at 23; *see also id.* at 21–25, 33. Meachum has not explained, however, why the degree of meaningfulness of the review is relevant. As Justice Brennan wrote in *Pembaur*, "[m]unicipal liability attaches only where the decision-maker possesses final authority to establish municipal policy with respect to the action ordered." 475 U.S. at 481, 106 S.Ct. 1292. Meachum has not argued that Moore had "final authority to establish" a university policy of racially discriminatory layoffs. Viewed in the light most favorable to plaintiff, the record does not reveal evidence sufficient for a factfinder reasonably to conclude that Moore was a "final policymaker." Temple is therefore entitled to summary judgment on Meachum's claims arising under § 1981.[9]

### Conclusion

For the foregoing reasons, defendant's motion for summary judgment is granted in part in an order accompanying this memorandum.[10]

### ORDER

For the reasons set forth in the accompanying memorandum, defendant's motion for summary judgment is DENIED as to plaintiff's Title VII claims and GRANTED as to plaintiff's claims under 42 U.S.C. § 1981.

---

cations of the proposed layoffs and submitted them to Dr. William T. Yates, Vice President of Affirmative Action. (*Id.* at 27–28, 33, 44, 47–48, 65.) Mr. White directed Dr. Yates to perform an adverse impact analysis. . . .
Def.Br. at 18–19. *See also* Moore Aff. ¶ 21.

I also need not address Temple's third argument—namely that § 1981 does not apply to at-will employment contracts. However, it should be noted that the argument is one that has been twice rejected by courts in this district. *See Marquess*, 1998 WL at 355519; *Bolden*, 1995 WL at 46694; *see also Hudson*, 1996 WL at 172054 (permitting 42 U.S.C. § 1981 action involving at-will contract between country club and parking service company for services of company's employees). *But see Moorer v. Grumman Aerospace Corp.*, 964 F.Supp. 665, 675 (E.D.N.Y.1997); *Moscowitz v. Brown*, 850 F.Supp. 1185, 1192 (S.D.N.Y.1994). *Cf. Haddle v. Garrison*, —— U.S. ——, 119 S.Ct. 489, 142 L.Ed.2d 502 (1998) ("the fact that employment at will is not 'property' for purposes of the Due Process Clause, *see Bishop v. Wood*, 426 U.S. 341, 345–47, 96 S.Ct. 2074, 48 L.Ed.2d 684 (1976) does not mean that loss of at-will employment may not 'injur[e] [petitioner] in his person or property' for purposes of § 1985(2).") (brackets in original; parallel citations omitted).

9.  Because I find above that Meachum has not satisfied the requirement that he come foreword with evidence of a university "custom or policy" of discrimination, I need not decide whether the Civil Rights Act of 1991 amendments to § 1981 created an implied cause of action. Federal courts have disagreed whether § 1981(c) abrogates *Jett* by creating an implied independent cause of action. *See Johnakin v. Philadelphia*, 1996 WL 18821 (E.D.Pa. Jan.18, 1996). The Third Circuit has not yet considered the issue. *Compare Marquess v. Philadelphia*, 1998 WL 355519 (E.D.Pa. June 29, 1998) (cause of action); *Hudson v. Radnor Valley Country Club*, 1996 WL 172054 (E.D.Pa. April 11, 1996) (same); and *Bolden v. Archdiocese of Philadelphia*, 1995 WL 46694 (E.D.Pa. Feb.1, 1995) (same), *with Poli v. SEPTA*, 1998 WL 405052 (E.D.Pa. July 7, 1998) (no cause of action). *Compare also Federation of African American Contractors v. City of Oakland*, 96 F.3d 1204 (9th Cir.1996) (cause of action) *with Dennis v. County of Fairfax*, 55 F.3d 151 (4th Cir.1995) (no cause of action).

10.  In his response to Temple's motion for summary judgment, Meachum seeks, in the alternative, leave to amend his complaint to state claims of action under § 1983. When proposed amendments are "futile," "the district court should decline to allow the amendment." *Klein v. Boyd*, 1998 WL 55245 at *19 (3d Cir. Feb.12, 1998). A futile amendment is one that would lead to an amended complaint still susceptible to a motion to dismiss under Rule 12(b)(6). *Id.* Because the "custom or policy" requirement applies to both § 1983 and § 1981, Meachum's proposed amendment would be futile. I therefore will not authorize the proposed amendment.