**Lawrence Raymond ALIRES,**
**Plaintiff-Appellant,**

v.

**AMOCO PRODUCTION COMPANY,**
**Defendant-Appellee.**

**No. 83–1086.**

United States Court of Appeals,
Tenth Circuit.

Sept. 30, 1985.

Adele Graham of Graham & Graham, Denver, Colo., for plaintiff-appellant.

Robert M. O'Connell, Chicago, Ill. (Cecil R. Hedger and Neil O. Andrus of Musick, Peeler & Garrett, Denver, Colo., with him on brief), for defendant-appellee.

Before LOGAN and SETH, Circuit Judges, and JENKINS, District Judge \*.

---

\* Honorable Bruce S. Jenkins, Chief United States District Judge for the District of Utah, sitting by designation.

SETH, Circuit Judge.

Lawrence Raymond Alires brought this action under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e–3(a), against Amoco Production Company. Appellant Alires alleged disparate treatment by Amoco because of his "national origin" and retaliation by Amoco because he engaged in a protected activity which was the filing of an Equal Employment Opportunity Commission (E.E.O.C.) complaint.

The trial court after the appellant presented his case in chief granted Amoco's motion for dismissal under Rule 41(b) of the Federal Rules of Civil Procedure. The court found the appellant failed to meet his initial burden of making a prima facie case.

The appellant on appeal raises several substantive and procedural issues. The appellant attacks various procedural rulings of the trial court on motions for continuance of the trial date and to amend the complaint and the pretrial order. He also contends the trial court erred in its findings of fact and conclusions of law.

Amoco hired the appellant as a roustabout in October 1975. A year later the appellant was promoted to the position of second class engineer. Because the appellant believed that promotion had been improperly delayed he attended a meeting of minority employees to discuss Amoco's minority employment practices. Management attended this meeting. The record indicates that the appellant took notes at the meeting but did not otherwise participate. At approximately the same time the appellant requested a transfer. The request was denied on the grounds that lateral transfers were permitted only for compelling personal reasons. The reasons offered by the appellant did not fit this category. Also there were apparently no positions open into which he could transfer. Shortly thereafter the appellant filed a charge of discrimination with the E.E.O.C.

At the trial herein the appellant attempted to show that the denial of his transfer was based on unlawful considerations of national origin. The trial court found no evidence indicating those considerations played any part in the refusal to transfer.

After the appellant filed his E.E.O.C. complaint he became embroiled in a number of controversial incidents at work. The trial court made the following findings of fact. On two occasions in January 1977 the appellant's wife called the plant approximately 45 minutes before the beginning of the shift to report the appellant as ill and unable to work. In early February the plant supervisor informed all employees at a meeting where appellant was present that they were not to "block open" the panels used to operate certain equipment at the plant. It was known to management that this technique was frequently used and that it constituted a serious safety violation. Notwithstanding the unequivocal nature of this order, the appellant in early March blocked open one of the panel boards.

The trial court also found that on the day of the blocking of the panel the appellant injured himself and failed to report it to the plant supervisor. Company policy clearly required employees to promptly report all injuries, regardless of their apparent severity. Appellant later underwent medical treatment. Two days later the appellant caused a rapid ventilation of gas from a compressor. This made a loud noise that caused a supervisor to assume the appellant had created a dangerous situation. It is also undisputed that the appellant and the supervisor subsequently engaged in a conversation that eventually culminated in an argument. All of these incidents were reported to Amoco's management. The trial court concluded that the appellant's conduct could be characterized fairly as violations of posted rules. The court also found there was support for management's view that the appellant had been insubordinate during the argument with the supervisor.

On March 14, 1977, Mr. Dillard, the Amoco district superintendent in charge of making disciplinary determinations, decided the appellant should be reprimanded for the perceived violations of posted rules and unsatisfactory job performance. Thus the

appellant received a verbal reprimand on March 21. The appellant also received a written memorandum which contained the warning that any further violation of posted rules would result in his discharge. Further, the memorandum admonished the appellant to improve his overall job performance or he could be subject to termination. The memorandum imposed a 60-day probationary period on these conditions.

The trial court explicitly found that the discipline carried out on March 21, 1977 was "based solely upon Mr. Dillard's belief that the plaintiff was guilty of misconduct and a breach of posted rules on March 6 and March 8, 1977."

The appellant filed a complaint with the E.E.O.C. and the E.E.O.C. mailed a notice thereof to Amoco's Denver office on March 18, 1977. However, Mr. Dillard did not receive notice of the charge until March 24. The trial court found "specifically that no official of the defendant, and especially none of those involved in the decisions to discipline the plaintiff, had notice or knowledge of the filing of the E.E.O.C. charge prior to the decision to impose discipline on the plaintiff on March 21, 1977."

The situation remained stable until May 9, 1977 when Mr. Staker, the plant supervisor, observed the appellant in a sleeveless shirt. Such a shirt was against a posted rule requiring "clothing to adequately cover the body." The supervisor ordered the plaintiff to put on an appropriate shirt. Later that afternoon another supervisor observed the appellant wearing a sleeveless shirt. Another order to change his clothing was given to the appellant, although it appears this order was not conveyed through the proper "chain of command."

Mr. Dillard learned of the shirt incident and decided that the appellant's refusal to follow Mr. Staker's initial order constituted insubordination. Hence Mr. Dillard decided to fire the appellant and did so on May 16. The trial court concluded this decision was motivated solely by legitimate business considerations and was not prompted by the E.E.O.C. complaint. On the whole the court found the evidence did not create a logical inference that an unlawful motivation controlled the decision to fire.

The appellant attempted to demonstrate the unlawful motivation by arguing the evidence showed the appellant was treated differently for his infractions than other workers who were not Hispanic. The court found that the instances of differing treatment were explicable as examples of managerial discretion and were Amoco's attempt to tailor discipline to fit the violation. Thus the only evidence of Amoco's having "concocted" the whole episode with the shirt came from the appellant. The trial court concluded the appellant's credibility was "questionable." Only surmise and conjecture supported the contention of disparate treatment. In its oral ruling on the motion to dismiss the court concluded by saying:

"In short, I find no evidence that the plaintiff was ever treated differently, at least no credible evidence, that he was ever treated differently from any other employee at the Spindle plant. I find specifically there is no causal link between the filing of the E.E.O.C. charge, and the discipline or the disciplinary actions taken against the plaintiff subsequent to the filing …, nor is there any rational basis to infer the existence of such a causal connection."

The appellant argues that dismissal under Federal Rule of Civil Procedure 41(b) was improvidently granted. The appellant had a full and fair opportunity to present his case. Cf. *Nulf v. International Paper Co.*, 656 F.2d 553, 559–60 (10th Cir.). Indeed, the record reflects that the trial court allowed the appellant to reopen his case in chief after he rested prematurely and after appellee's motion to dismiss under Rule 41(b). The appellant's case then took up nearly 700 pages of trial transcript and all witnesses he had listed were called. At the conclusion of appellant's case the court determined a prima facie case had not been established, and under Rule 41(b) no right to relief existed and dismissal was proper. The trial court indicated that the appellant's burden to establish a prima facie

case was a real one as in any case. The trial court also observed that *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668, does not require a strict tripartite division of the trial in a Title VII case as the appellant argued. *McDonnell Douglas* and similar cases are indications of an acceptable order of proof, but do not create a ritual. We agree.

The appellant contends the trial court shortcircuited the order of proof by granting the Rule 41(b) dismissal at the end of his case in chief. Implicit in the argument is the assertion that *McDonnell Douglas* requires a rigid and unvarying three-tiered presentation. This assertion is unsupported both by the law and common sense. The prima facie case approach was never intended to be "rigid, mechanized, or ritualistic." *United States Postal Service Bd. of Govs. v. Aikens,* 460 U.S. 711, 715, 103 S.Ct. 1478, 1482, 75 L.Ed.2d 403; *Furnco Construction Corp. v. Waters,* 438 U.S. 567, 577, 98 S.Ct. 2943, 2949, 57 L.Ed.2d 957; *E.E.O.C. v. Samsonite Corp.,* 723 F.2d 748, 749 (10th Cir.). We quoted from *Aikens* at some length in *Samsonite.* But again in *Aikens* the Court said, 460 U.S. at 715, 103 S.Ct. at 1482:

> "The prima facie case method established in *McDonnell Douglas* was 'never intended to be rigid, mechanized, or ritualistic. Rather, it is merely a sensible, orderly way to evaluate the evidence in light of common experience as it bears on the critical question of discrimination.' *Furnco, supra,* [438 U.S.], at 577 [98 S.Ct. at 2949]."

And at 716, 103 S.Ct. at 1482:

> "All courts have recognized that the question facing triers of fact in discrimination cases is both sensitive and difficult.... There will seldom be 'eyewitness' testimony as to the employer's mental processes. But none of this means that trial courts or reviewing courts should treat discrimination differently from other ultimate questions of fact. Nor should they make their inquiry even more difficult by applying legal rules which were devised to govern

'the basic allocation of burdens and order of presentation of proof,' [*Texas Dept. of Community Affairs v.*] *Burdine,* 450 U.S. [248], at 252 [101 S.Ct. 1089, at 1093, 67 L.Ed.2d 207], in deciding this ultimate question. The law often obliges finders of fact to inquire into a person's state of mind."

In *Nulf v. International Paper Co.,* 656 F.2d 553 (10th Cir.), we considered an appeal in which the trial court had concluded that the plaintiff had not made out a prima facie case of discrimination for any of her several claims. We there said, at 560:

> "There is no merit to the assertion that it was improper for the trial court to so rule before allowing Nulf to present evidence on rebuttal which purportedly would have established pretext. It became Nulf's responsibility to present this evidence in her case in chief once she provided a legitimate reason for her own discharge. We are in complete concurrence with the Ninth Circuit's resolution of the same issue in *Sime v. Trustees of California State University and Colleges,* 526 F.2d 1112. There, appellant Sime argued it was improper for the trial court to rule on a Rule 41(b) motion 'without first affording Plaintiff a fair opportunity to show that the reason advanced [for failure to hire] was a pretext for discriminatory conduct.' *Id.* at 1113."

As indicated, we there cited *Sime v. Trustees.* We also agree with *Holden v. Commission Against Discrimination,* 671 F.2d 30 (1st Cir.), decided after *Nulf.*

In *Nulf* the plaintiff had put on her case and the court had heard a few questions and some cross-examination of the defendant's first witness when the motion was granted. We noted that the trial court had recited that there was a failure by plaintiff to establish a prima facie case, but the entire proof had been considered and our holding was based on a failure to meet the ultimate burden. There was a similar situation before the court in *Kentroti v. Frontier Airlines, Inc.,* 585 F.2d 967 (10th Cir.), and we found it was not necessary to de-

cide whether the trial court decided the case on a failure of plaintiff to make a prima facie case or a basic failure to prove discrimination. *See also Lujan v. New Mexico Health and Social Services Department,* 624 F.2d 968 (10th Cir.). In the case before us the motion by defendant before the trial court was under Rule 41(b) and the court granted the motion, made findings and dismissed the case. The Rule in part provides:

"After the plaintiff, in an action tried by the court without a jury, has completed the presentation of his evidence, the defendant ... may move for a dismissal on the ground that upon the facts and the law the plaintiff has shown no right to relief."

The Rule further provides that the court is then to determine the facts and render judgment. This the trial court did, and we take the case on that basis.

■■■ The trial court considered all the evidence and the exhibits which represented all the material the appellant sought to bring before the court. As mentioned, the appellant rested after presenting some evidence, the defendant then moved under Rule 41(b) and the trial court did not then rule on the motion but then permitted appellant to reopen. Appellant then called the witnesses he had listed including the supervisory employees of defendant. These witnesses were also cross-examined and exhibits introduced. The transcript includes some 700 pages of testimony following the reopening by appellant. All issues were covered by the testimony including that of retaliation. The timing of the events was established and the reasons for the actions taken by the supervisors were described in detail. In substance all the issues properly in the case were tried and the court's findings demonstrate that this evidence was evaluated by the court and credibility matters resolved and commented on. The appellant had a full and free opportunity to put on all the evidence he wished. The only real objection made was and is to the order of proof. The order of proof is ordinarily a matter within the discretion of the trial court. In view of the comments of the Supreme Court in *United States Postal Service Board v. Aikens,* 460 U.S. 711, 103 S.Ct. 1478, 75 L.Ed.2d 403, we find no abuse of discretion in this case. The findings of the trial court on the basic issue on the merits are supported by the record. This usual standard as repeated recently in *Anderson v. City of Bessemer City,* —— U.S. ——, 105 S.Ct. 1504, 84 L.Ed.2d 518, is of course applied in Rule 41(b) cases.

We have considered the several procedural issues raised by appellant. These include: whether the trial court should have granted a continuance; whether the court should have granted a motion to amend his complaint and a motion to amend the pretrial order.

We find no abuse of discretion as to the refusal to grant a continuance. *Robinson v. United States,* 718 F.2d 336 (10th Cir.); *Fulton v. Coppco, Inc.,* 407 F.2d 611 (10th Cir.).

As to the amendment of the pretrial order to include new issues we have held that "manifest injustice" must be shown to result if the amendment is not made. The trial court applied this rule and determined that the requirement was not met. We agree. *Seneca Nursing Home v. Secretary of Social and Rehabilitation Services,* 604 F.2d 1309 (10th Cir.). The pretrial order necessarily controls the course of the trial. *Smith v. Ford Motor Co.,* 626 F.2d 784 (10th Cir.); *Case v. Abrams,* 352 F.2d 193 (10th Cir.). The motion to amend the complaint was subordinate to the motion to amend the pretrial order.

We have considered the other issues raised by appellant and find them to be without merit.

AFFIRMED.