**Lisa HAWKINS, Plaintiff,**

v.

**PEPSICO INC. d/b/a Pepsi–Cola North America, Pepsi–Cola Bottling North America and Pepsi South, Defendant.**

**No. 6:96CV01013.**

United States District Court, M.D. North Carolina, Winston–Salem Division.

July 6, 1998.

Joyce Leigh Davis, Zoe Gabriele Mahood, Joyce L. Davis & Associates, Raleigh, NC, for Plaintiff.

Cecil W. Harrison, Jr., Laura Broughton Russell, Poyner & Spruill, L.L.P., Raleigh, NC, Charisse R. Lillie, Paula Castaldo Colton, Suzanne E. Turner, Debra E. Kohn, Ballard Spahr Andrews & Ingersoll, Philadelphia, PA, for Defendant.

### MEMORANDUM OPINION

OSTEEN, District Judge.

This matter is before the court on Defendant Pepsico, Inc.'s Motion for Judgment as a Matter of Law. For the following reasons, the court will grant the Defendant's motion.

### FACTS AND PROCEDURE

Plaintiff Lisa Hawkins, who is black, began working for Defendant in 1990 as Brand Manager in retail sales. In 1991, Defendant promoted Plaintiff to Franchise Manager for independently owned bottling facilities. Defendant subsequently transferred Plaintiff to the position of Administrative Manager. In June 1993, Plaintiff became a Customer Sales Manager (Tell–Sell Manager) at Defendant's newly established Customer Service Center (CSC) in Winston–Salem, North Carolina.

Plaintiff's supervisor at the CSC was Sally Price. In October 1993, Price gave Plaintiff written "developmental feedback," which reflected Price's dissatisfaction with Plaintiff's job performance. (Pl.'s Trial Ex. 66.) Plaintiff responded to Price by memorandum, stating that Plaintiff believed Price's criticism was unwarranted and that Plaintiff was experiencing racism and sexual harassment. (Pl.'s Trial Ex. 73.) In December 1993, Plaintiff sent a copy of the memorandum and developmental feedback to Price's supervisor, Brenda Barnes. (Pl.'s Trial Ex. 115.) Further, Plaintiff complained to Ron Parker and Lawrence Jackson, two black Pepsi executives. (Parker Dep. at 156–58; Jackson Dep. at 265–71.) In January 1994, Price formally rated Plaintiff's performance "Below Target," meaning Plaintiff met "some of many but not all position requirements." (Pl.'s Trial Ex. 91.) Price terminated Plaintiff's employment in March 1994. (Pl.'s Trial Ex. 100.) This lawsuit followed.

Plaintiff alleged in her Complaint that Defendant subjected her to a racially hostile work environment, fired her because she is black, and fired her in retaliation for her complaints of racial discrimination, all in violation of 42 U.S.C. § 1981 and North Carolina law. Plaintiff further alleged intentional and negligent infliction of emotional distress, in violation of North Carolina law.

Defendant moved for summary judgment on Plaintiff's hostile work environment and infliction of emotional distress claims only. As an initial matter, the court held barred by the statute of limitations any claims that arose out of Plaintiff's experience at Pepsi

prior to the CSC. (Mag. Judge Recommendation, 1/29/98; Order, 3/12/98.) Then, after reviewing Price's treatment of Plaintiff at the CSC, the court granted Defendant's Motion for Summary Judgment on Plaintiff's hostile work environment and infliction of emotional distress claims. *Id.* Remaining for trial were Plaintiff's discriminatory and retaliatory discharge claims under § 1981 and North Carolina law.

A jury trial began on May 6, 1998. At the close of Plaintiff's evidence, Defendant moved pursuant to Rule 50 of the Federal Rules of Civil Procedure for judgment as a matter of law. Defendant argues that Plaintiff cannot prevail under § 1981 because she failed to establish that she had a contractual relationship with Defendant, and she failed to prove discriminatory and retaliatory discharge. (Def.'s Mem.Supp.Mot.J. Matter Law at 2.) Defendant further argues that Plaintiff cannot prevail under North Carolina law because she failed to prove wrongful or bad faith discharge. *Id.* at 2–3.

## JUDGMENT AS A MATTER OF LAW

■ Judgment as a matter of law is appropriate when "a party has been fully heard on an issue and there is no legally sufficient evidentiary basis for a reasonable jury to find for that party on that issue." Fed.R.Civ.P. 50(a). "To defeat an employer's motion for judgment as a matter of law as to liability in a discrimination suit, the plaintiff must present substantial evidence to support as a reasonable probability, rather than as a mere possibility, that her employer discriminated against her because of a protected characteristic." *DeJarnette v. Corning Inc.*, 133 F.3d 293, 298 (4th Cir.1998).

## PLAINTIFF'S SECTION 1981 CLAIM

Defendant argues that Plaintiff cannot prevail under § 1981 because she failed to establish that her claims arose out of a contractual relationship. (Def.'s Mem.Supp.Mot.J. Matter Law at 4–5.) Defendant contends that Plaintiff was an at-will employee with no contractual rights defining the term of her employment. *Id.* Plaintiff counters that she can prevail under § 1981 because "[a]n at-

will employment relationship is still a contractual relationship." (Pl.'s Resp.Mot.J. Matter Law at 17.)

■ Section 1981 states, in relevant part, "[a]ll persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts...." 42 U.S.C. § 1981(a). "Make and enforce contracts" is defined to include "the making, performance, modification, and termination of contracts, and the enjoyment of all benefits, privileges, terms, and conditions of the contractual relationship." 42 U.S.C. § 1981(b). A plaintiff proceeding under § 1981 must prove both intentional discrimination and that the discrimination interfered with a contractual relationship. *Murray v. National Broadcasting Co.*, 844 F.2d 988, 995 (2nd Cir.1988); *Krulik v. Board of Educ. of City of N.Y.*, 781 F.2d 15, 23. (2nd Cir.1986). Citing *Murray* and *Krulik*, district courts within the Second Circuit have repeatedly held that a plaintiff alleging employment discrimination under § 1981 cannot succeed without establishing that the discrimination arose from a contractual relationship.

In *Moscowitz v. Brown*, 850 F.Supp. 1185, 1189 (S.D.N.Y.1994), the plaintiff brought pursuant to § 1981 discriminatory and retaliatory discharge claims against his former employer. The court examined the terms of the plaintiff's employment to determine whether his claims arose out of a contractual relationship. *Id.* at 1192. Under state law, the plaintiff's employment was terminable at will. *Id.* Finding no employment contract, the court held that the plaintiff failed to state a § 1981 claim:

> [A]ccording to the plain language of Section 1981, plaintiff's claim would have to be based on a contractual relationship with the [employer], and there is no allegation of such a relationship.[1]

*Id.*

In *Moorer v. Grumman Aerospace Corp.*, 964 F.Supp. 665, 667 (E.D.N.Y.1997), the plaintiff brought pursuant to § 1981 a dis-

---

1. The court also held that the plaintiff failed to specifically allege that his termination was dis-

criminatory. *Moscowitz v. Brown*, 850 F.Supp. 1185, 1193 (S.D.N.Y.1994).

criminatory employment practices claim against his employer. The employer moved for summary judgment, arguing that no underlying contract existed upon which to base the plaintiff's claim. *Id.* at 675. Noting that "[b]y its very terms, Section 1981 governs contractual relationships," the court dismissed the plaintiff's claim. *Id.* The court held that the plaintiff had failed to establish "the existence of a contractual relationship with the defendant sufficient to support a Section 1981 cause of action." [2] *Id.* at 676.

Plaintiff argues that the court should not rely on *Moorer* and *Moscowitz* because these cases wrongly relied upon *Murray* and *Krulik*, Second Circuit decisions that were overruled by the 1991 amendments to § 1981. (Pl.'s Resp.Def.'s Mot.J. Matter Law at 17.) Plaintiff contends that the 1991 amendments broadened the scope of § 1981. *Id.* While the court agrees that the 1991 amendments broadened the scope of § 1981, the court disagrees with Plaintiff's interpretation of the effect of the amendments.

■ In *Patterson v. McLean Credit Union,* 491 U.S. 164, 109 S.Ct. 2363, 105 L.Ed.2d 132 (1989), the Supreme Court held that § 1981 did not provide relief for "any claim based on actions which occur after the contract has been formed." *Williams v. First Union Nat'l Bank of N.C.,* 920 F.2d 232, 234 (4th Cir.1990). The Supreme Court held that "section 1981's right to make contracts provision governs only conduct prior to the formation of the contract." *Id.* The 1991 amendments to § 1981 overruled *Patterson. Beardsley v. Webb,* 30 F.3d 524, 527 (4th Cir.1994). Congress broadened the scope of § 1981 to cover post-contract formation discrimination, including "claims of racial discrimination based upon wrongful termination." *Douglas v. Evans,* 916 F.Supp. 1539, 1555 (M.D.Ala.1996). What Congress did not do in 1991, however, was remove from the language of § 1981 the phrase "make and enforce contracts."

■ During a hearing on Defendant's Rule 50 motion, the following exchange occurred between the court and Plaintiff's counsel:

> Court: Now, why does the word contract appear in 1981? Is there any significance in the fact that that appears—
>
> Defense Counsel: I do not believe so, Your Honor. I think, inherently, all employment relationships, whatever they might be, are contractual in nature.

(Tr. of 5/18/98, at 125). The court cannot agree with Plaintiff's interpretation of the scope § 1981. To determine whether a claim falls within the scope of a statute, a court must look first to the language of the statute. *Consumer Prod. Safety Comm'n v. GTE Sylvania, Inc.,* 447 U.S. 102, 108, 100 S.Ct. 2051, 2056, 64 L.Ed.2d 766 (1980). "[T]he starting point for interpreting a statute is the language of the statute itself." Not only does the language of § 1981(a) employ the phrase "make and enforce *contracts,*" but the statute further defines the phrase to include "the making, performance, modification, and termination of *contracts,* and the enjoyment of all benefits, privileges, terms, and conditions of the *contractual relationship.*" 42 U.S.C. § 1981(b) (emphasis added).

■ It is clear from the language of § 1981 that Congress intended for that statute to provide relief for claims of discrimination that arise out of contractual relationships. "Section 1981 was not enacted to duplicate the protection offered by federal antidiscrimination legislation. It was aimed instead at protecting a much narrower scope of activity—the right to make and enforce contracts." *Williams v. First Union Nat'l Bank,* 920 F.2d 232, 235 (4th Cir.1990). The scope of § 1981 extends to claims of discrimination that arise out of "contractual employment relationships." *Dennis v. County of Fairfax,* 55 F.3d 151, 155 (4th Cir.1995). Thus, in addition to proving intentional discrimination, a plaintiff alleging employment discrimination under § 1981 must prove that the discrimination arose out of a contractual relationship.

Plaintiff argues that an at-will employment relationship is a contractual relationship within the scope of § 1981. (Pl.'s Resp.Def.'s

---

**2.** The court also held that the plaintiff "produced no evidence of racial discrimination." *Moorer v.* *Grumman Aerospace Corp.,* 964 F.Supp. 665, 676 (E.D.N.Y.1997).

Mot. J. Matter Law at 17). The Seventh Circuit recently confronted this issue of "whether employment at-will provides a sufficient contractual relationship to support section 1981 claims." *Gonzalez v. Ingersoll Milling Mach. Co.*, 133 F.3d 1025, 1034 (7th Cir.1998). In *Gonzalez,* the plaintiff brought under § 1981 a discriminatory discharge claim against her former employer. *Id.* at 1033. The defendant moved for summary judgment, arguing that the plaintiff could not prevail under § 1981 because an employment contract setting out the term of employment never existed between the parties. *Id.* The plaintiff countered that the employee handbook constituted an employment contract. *Id.* at 1034. The district court rejected the plaintiff's argument and held that the plaintiff failed to establish the existence of a contractual relationship with her employer sufficient to support a § 1981 claim for wrongful termination.[3] *Id.* at 1033.

On appeal, the plaintiff argued that she had an "employment at will" contract. *Id.* at 1034. The Court of Appeals noted first that "[i]n order to bring a section 1981 claim there must at least be a contract." *Id.* The court examined under state law the terms of the plaintiff's employment and determined that she was an at-will employee. *Id.* The court then quoted dicta from one of its prior cases: "A contract for employment at will may end abruptly but it is a real and continuing contract nonetheless, not a series of contracts each a day—or a minute—long." *Id.* (quoting *McKnight v. General Motors Corp.*, 908 F.2d 104, 109 (7th Cir.1990)). Thus, the issue for the court was "whether employment at-will provides a sufficient contractual relationship to support section 1981 claims." *Gonzalez,* 133 F.3d at 1034.

The court stated that "[a]rguably," the plaintiff could not proceed under § 1981 because the plaintiff was an at-will employee

without contractual rights regarding the term of her employment. *Id.* at 1035. The court cited *Moorer* and *Moscowitz* as examples of courts that have dismissed § 1981 claims brought by at-will employees. *Id.* The court, however, did not decide whether the plaintiff's at-will status was a contractual relationship adequate to support a § 1981 claim because even if it were, the plaintiff failed to submit sufficient evidence to establish intentional discrimination.

Although *Gonzalez* did not reach the issue of whether employment at-will provides a sufficient contractual relationship to support a § 1981 claim, the court finds persuasive the reasoning employed by the Seventh Circuit. The court also finds persuasive the decisions in *Moorer* and *Moscowitz,* dismissing § 1981 employment discrimination claims brought by at-will employees.

▮▮▮ "North Carolina is an employment-at-will state." *Kurtzman v. Applied Analytical Indus., Inc.,* 347 N.C. 329, 331, 493 S.E.2d 420, 422 (1997). The North Carolina Supreme Court has repeatedly held that, subject to limited exceptions,[4] "in the absence of a contractual agreement between an employer and an employee establishing a definite term of employment, the relationship is presumed to be terminable at the will of either party without regard to the quality of performance of either party." *Id.*

▮▮▮ Plaintiff admits that she was an at-will employee, (Cl.'s Resp.Def.'s Mot.J. Matter Law at 17–18.) She had no contractual rights with respect to the duration of her employment. Plaintiff contends, however, that her at-will status was a contractual relationship within the scope of § 1981. Plaintiff and Defendant did enter into an agreement: Plaintiff agreed to work for Defendant and Defendant agreed to compensate Plaintiff. (Pl.'s Trial Exs. 3, 43.) Plaintiff's § 1981

---

3. The district court further held that even if there were a contract, post-formation discriminatory treatment of an employee was not covered by § 1981. The Court of Appeals properly reversed this holding in the light of the 1991 amendments to § 1981, which made post-contract formation conduct by an employer actionable under § 1981. *Gonzalez v. Ingersoll Milling Mach. Co.,* 133 F.3d 1025, 1033–34 (7th Cir.1998).

4. Exceptions to the at-will employment doctrine: 1) where the employer and employee contractually agree to a definite term of employment; 2) where the employer violates state or federal anti-discrimination laws; and 3) where the employer violates state public policy. *Kurtzman v. Applied Analytical Indus., Inc.,* 347 N.C. 329, 331, 493 S.E.2d 420, 422 (1997).

claims, however, do not arise out of this agreement but out of Defendant's termination of her employment. Plaintiff had no contract with respect to the continuation or duration of her employment. Thus, Plaintiff's discriminatory and retaliatory discharge claims do not arise out a contractual relationship. The Court holds that because Plaintiff's claims do not arise out of a contractual relationship, she cannot prevail under § 1981. An at-will employee alleging wrongful termination cannot prevail under § 1981 because no contractual relationship exists from which the employee's claim could arise.

Even if Plaintiff had established the existence of a contractual relationship with respect to the term of her employment, she failed to "present substantial evidence to support as a reasonable probability, rather than a mere possibility," that Defendant discriminated or retaliated against her. *DeJarnette*, 133 F.3d at 298.

Plaintiff bears the ultimate burden of proving intentional discriminatory or retaliatory discharge. *See Karpel v. Inova Health Sys. Serv.*, 134 F.3d 1222, 1227–28 (4th Cir.1998). In the absence of direct evidence, Plaintiff can rely on circumstantial evidence that establishes an inference of discriminatory or retaliatory intent. *See id.* Because the record is devoid of any direct evidence, the court examines Plaintiff's circumstantial evidence under the proof scheme set out in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802, 93 S.Ct. 1817, 1824, 36 L.Ed.2d 668 (1973).

In *McDonnell Douglas*, the Supreme Court "established an allocation of the burden of production and an order for the presentation of proof in Title VII discriminatory-treatment cases."[5] *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 506, 113 S.Ct. 2742, 2746, 125 L.Ed.2d 407 (1993). Under the *McDonnell Douglas* proof scheme, Plaintiff must first establish a prima facie case of discriminatory or retaliatory discharge. *See Karpel*, 134 F.3d at 1227–28. If Plaintiff succeeds, then a presumption is created that Defendant unlawfully engaged in discrimination or retaliation. *See id.* at 1227–29; *Beall*

---

**5.** The Supreme Court has held the *McDonnell Douglas* proof scheme also applies to claims brought under § 1981. *See Patterson v. McLean*

---

*v. Abbott Lab.*, 130 F.3d 614, 619 (4th Cir. 1997). Defendant can rebut the presumption by stating legitimate, nondiscriminatory reasons for terminating Plaintiff's employment. *See Karpel*, 134 F.3d at 1229; *Beall*, 130 F.3d at 619. If Defendant proffers such reasons, then Plaintiff must prove both that Defendant's proffered reasons are false and that the real reason is intentional discrimination or retaliation. *See Beall*, 130 F.3d at 619.

Plaintiff's evidence reveals several alleged reasons for her discharge: Plaintiff's job performance, the elimination of her position, her failure to accept a different position at the CSC, the unavailability of a sales position outside the CSC, and her refusal to return to work. (Pl.'s Trial Ex. 91; 5/11/98 Tr. at 16, 31, 48; Marvin Dep. at 200–04, 245–47; Price Dep. at 245–52, 265–74, 282–94.) Defendant may rely on Plaintiff's evidence to satisfy its burden of production under *McDonnell Douglas*. *See Alires v. Amoco Prod. Co.*, 774 F.2d 409, 412–13 (10th Cir.1985); *Flowers v. Crouch–Walker Corp.*, 552 F.2d 1277, 1281–82 (7th Cir.1977); *Sime v. Trustees of Cal. State Univ. and Colleges*, 526 F.2d 1112, 1113–15 (9th Cir.1975). The court finds that Defendant's alleged reasons for discharging Plaintiff, whether taken separately or together, are both legitimate and nondiscriminatory. *See DeJarnette*, 133 F.3d at 298–300 (job performance); *Beall*, 130 F.3d at 619 (position elimination); *Hartsell v. Duplex Prod., Inc.*, 123 F.3d 766, 775–76 (4th Cir.1997) (refusal to return to work); *United States Equal Employment Opportunity Comm'n v. T.I.M.E. D.C. Freight, Inc.*, 659 F.2d 690, 693–94 (5th Cir.1981) (refusal to accept other employment opportunities). Thus, the court need not determine whether Plaintiff established a prima facie case of either discriminatory or retaliatory discharge. Instead, the court's focus is on whether Plaintiff presented substantial evidence showing the alleged reasons for her discharge are false and that the real reason is intentional discrimination or retaliation. *See DeJarnette*, 133 F.3d at 297–98.

---

*Credit Union*, 491 U.S. 164, 186, 109 S.Ct. 2363, 2377–78, 105 L.Ed.2d 132 (1989).

Plaintiff and several of her co-workers testified that Plaintiff was a good employee, and Plaintiff presented samples of her work product as evidence that she performed her job well. Plaintiff's opinion of her own job performance, however, is irrelevant. *See DeJarnette,* 133 F.3d at 299. "Similarly, that plaintiff's coworkers 'may have thought that [she] did a good job, or that [she] did not "deserve" [to be discharged], is close to irrelevant.'" *Id.* (quoting *Conkwright v. Westinghouse Elec. Corp.,* 933 F.2d 231, 235 (4th Cir.1991)). Further, Plaintiff's work product merely shows that Plaintiff was working, not that she was performing her job well or to Price's satisfaction. Plaintiff failed to present substantial evidence showing that her job performance was not a genuine reason for her discharge. Because Plaintiff has not presented such evidence, the court need not address Defendant's other legitimate, nondiscriminatory reasons for terminating Plaintiff's employment. The court " 'does not sit as a kind of super-personnel department weighing the prudence of employment decisions made by firms charged with employment discrimination ...' " *DeJarnette,* 133 F.3d at 299 (quoting *Giannopoulos v. Brach & Brock Confections, Inc.,* 109 F.3d 406, 410 (7th Cir.1997)).

Plaintiff has not demonstrated that Price's actions were motivated by discrimination or retaliation. Plaintiff presented evidence showing that when Price hired Plaintiff, Price knew Plaintiff's race (Marvin Dep. at 68) and knew that Plaintiff had complained of past racial discrimination at Pepsi (Marvin Dep. at 101–15). Price fired Plaintiff after approximately nine months at the CSC. The court finds that Price's knowledge of Plaintiff's race and past problems coupled with Price's hiring and firing of Plaintiff within a relatively short time span create a strong inference that Price's stated reasons for discharging Plaintiff are not pretextual. *See DeJarnette,* 133 F.3d at 298; *Jiminez v. Mary Washington College,* 57 F.3d 369, 378 (4th Cir.1995); *Proud v. Stone,* 945 F.2d 796, 797 (4th Cir.1991).

Further, Plaintiff has not presented substantial evidence showing that her January 1994 performance evaluation was in any way a result of her sending a memorandum critical of Price to Brenda Barnes or of her complaints to Ron Parker and Lawrence Jackson. In the evaluation, Price noted deficiencies similar to those she noted in the October 1993 developmental feedback, which was approximately two months prior to Plaintiff's memorandum to Barnes. Plaintiff's evidence shows that Price was dissatisfied with Plaintiff's performance even before Plaintiff contacted Barnes, Parker, and Jackson.

Plaintiff's evidence shows nothing more than Plaintiff's own suspicion that Price fired her because she is black or in retaliation for Plaintiff's complaints of racial discrimination. Because any finding of intentional discrimination or retaliation would be based on speculation or conjecture and not on substantial evidence, the court withdraws Plaintiff's § 1981 claims from the jury.

## PLAINTIFF'S STATE LAW CLAIMS

Plaintiff alleges that Defendant's discrimination and retaliation constitute wrongful or bad faith discharge in violation of North Carolina public policy, namely the Equal Employment Protection Act, N.C.Gen. Stat. § 143–422.2. Plaintiff's state claims are based on the same facts as her § 1981 claims. The evidentiary standards for wrongful or bad faith discharge and § 1981 claims are the same. *Hughes v. Bedsole,* 48 F.3d 1376, 1383 (4th Cir.1995); *North Carolina Dep't of Correction v. Gibson,* 308 N.C. 131, 141, 301 S.E.2d 78, 85 (1983). Because Plaintiff failed to present substantial evidence to support her § 1981 claims, she cannot prevail on her wrongful or bad faith discharge claims under North Carolina law.

A judgment in accordance with this memorandum opinion shall be filed contemporaneously herewith.