Leon **WALLER**, Plaintiff,

v.

**SPRINT MID ATLANTIC TELECOM**, Defendant.

No. 4:97–CV–235–H(3).

United States District Court, E.D. North Carolina, Eastern Division.

June 11, 1999.

Geraldine Sumter, Ferguson, Stein, Wallas, Adkins, Gresham & Sumter, Charlotte, NC, for Plaintiff.

Leon Waller, Tarboro, NC, Pro se.

Thomas J. Manley, Hunton & Williams, Maria E. Hallas, Hunton & Williams, Raleigh, NC, for Sprint Mid Atlantic Telecom, defendant.

## ORDER

MALCOLM J. HOWARD, District Judge.

This matter is before the court on defendant's motions for summary judgment pursuant to Fed.R.Civ.P. 56 and for sanctions pursuant to Fed.R.Civ.P. 11. Both parties have briefed the court on their positions; therefore, this matter is ripe for ruling.

### STATEMENT OF THE CASE

This dispute arises out of an employment relationship between plaintiff, Leon Waller ("Waller"), and defendant, Sprint Mid Atlantic Telecom ("Sprint"). Waller alleges that Sprint discriminated against him in violation of Title VII of the Civil Rights Act of 1964[1], when Sprint demoted him.

Waller began working for Sprint in 1978 as a janitor and worked his way up to a management position, remaining in that position until resigning from Sprint in 1996. Waller's troubles began when Sprint promoted him to Force Management Analyst ("FMA") in April 1994.

Sprint has divided control of its territory into distinct geographical regions. North Carolina, South Carolina, Tennessee and Virginia comprises the mid-Atlantic region. The region is further divided into areas of responsibility for FMAs who work in an operations center in Rocky Mount, North Carolina. The FMAs manage the field work force in their areas of responsibility within the mid-Atlantic region. FMAs analyze workload/workforce requirements, make decisions needed to adjust workloads, identify system problems and initiate and communicate regarding required actions and resolutions of problems.

From the Rocky Mount Operations Center, FMAs coordinate field personnel in their duties of repairing cables and phone lines, installing new phone lines and servicing and providing other on-site customer service. Sprint trains the FMAs to effectively analyze incoming trouble calls and service orders and proactively respond to increased workloads so that the technicians in the field can flexibly respond to troubled areas.

Waller understood the duties of a FMA, but his performance evaluations indicate that he had difficulty carrying out those duties. His 1994 performance evaluation reflects that he received a "4" rating in four out of seven core dimension[2] for his

1. Waller's complaint also alleged a violation of 42 U.S.C. § 1981, however he appears to have abandoned this claim by failing to address it in his response to Sprint's motion for summary judgment. Because of Waller's status as an at-will employee, he fails to establish a claim under § 1981. *See Hawkins v. Pepsico, Inc.,* 10 F.Supp.2d 548, 554 (M.D.N.C. 1998). Sprint's motion for summary judgment on Waller's § 1981 claim is GRANTED.

2. The seven core dimensions include leadership, communication, management, personal effectiveness, professional knowledge/global awareness, customer orientation and team approach.

position. A "4" rating is defined as "marginal" and "significantly below" Sprint's expectations. Rather than improving, Waller's evaluation became worse in 1995. He received five "4" ratings and two "5" ratings. A rating of "5" is defined as "unsatisfactory" and an unacceptable skill level.

> Waller's rater, Holly Morse, stated that Leon is not performing in his present position to the potential expected, and required for an employee who has been in this position for the same length of time and had the same training. He has demonstrated a lack of initiative to learn and reacts in an uninterested manner to problems.

(Ex. 19 Attached to Def.'s Mem. in Support of Mot. to Dismiss.) Waller admits that Sprint's concerns were legitimate. Waller's behavior, causing Sprint legitimate concern, continued in 1996.

In March 1996, a field district manager, Roseann Wells, sent an e-mail to Jim Brackens ("Brackens"), Morse's boss, complaining that Waller "panics, moves people, and then we miss commitments." Morse counseled Waller on the complaint.

In May 1996, Brackens received more complaints concerning Waller from Gordon Hamilton, the Kingsport district manager. Hamilton complained that Waller failed to watch commit times, did not respond to concerns with a sense of urgency and failed to make technicians available for tasks. Waller admits that Hamilton's concerns were legitimate. Due to persistent problems, Sprint transferred Waller to the South Boston/Front Royal district.

In July 1996, Kelly Wells, a field manager in Waller's district, complained to Bracken about Waller's performance. Kelly Wells asserted that Waller's performance resulted in an "absurd waste of [her] time," and

> When Leon took over my district, I immediately began getting complaints from my technicians about increased

travel time, missed commitments, getting tasks loaded to them that were not in their work areas, techs from other districts getting tasks from my district loaded to them, etc. I assured my techs that this was due to the fact that Leon was new to our area and that his performance would improve ... the most disturbing aspect of the situation is that when I have talked to Leon, he does not seem to be concerned about these problems and does not seem to be willing to change. He makes statements like, "This is the way I do things." Well, the way he does things doesn't work for my area ... This situation is intolerable. If Leon worked for me, I would fire him. Since he doesn't work for me, I am at your mercy, I am begging that you assign a different analyst to my area immediately.

(Ex. 1 Attached to Def.'s Mem. in Support of Summ. J.) Waller again admits that Kathy Wells' concerns about his performance were legitimate.

Herb Henderson ("Henderson"), who is African–American, and served as Vice President, Customer Service, Consumer Marketing[3] in 1996, also began receiving complaints from district field managers about Waller's performance. Henderson testified at deposition that Waller is the only FMA about whom the district field managers ever complained. As a result of these complaints, Henderson requested that Human Resources review the matter. As a result of the review, Henderson learned that Waller had received the lowest annual performance evaluation of any FMA in the history of the Rocky Mount Operations facility; that no other FMA had received ongoing severe complaints from district field managers; and that the complaints were well documented.

After Henderson learned of Waller's performance, he made the decision to transfer him to another position. Waller

---

**3.** As vice president of customer service, the Rocky Mount Operations Center was under his direction.

received a disciplinary record explaining the reasons for his transfer. He admits that the contents of the disciplinary record are true.

Sprint attempted to place Waller in numerous positions within the company, but he was either not the most qualified for the job, or the job was a union job and Waller was not a member of the union and could not be considered for union jobs unless no union members were available. Eventually, Sprint created a job for Waller as a phone operator. Sprint trained Waller for the phone operator position, but Waller was not satisfied, and found that although the job was not generally demeaning, it was demeaning to him because he left a management position and was placed in a non-management job. There is no doubt that the demotion took an emotional toll on Waller as demonstrated by his subjective feelings of discrimination and his need to seek psychiatric help.

Due to his dissatisfaction, Waller filed an internal complaint alleging that he was rated unfairly and that he should have been placed in a lateral position with equal pay. Sprint investigated Waller's complaint and concluded that his ratings and transfer were appropriate. Waller voluntarily resigned one business day after receiving Sprint's decision regarding his complaint.

Waller filed a complaint with the Equal Employment Opportunity Commission and received a right to sue letter. He then timely filed suit, *pro se*, but immediately thereafter retained counsel. Counsel represented him throughout his deposition. After Waller's admissions as to the propriety of Sprint's evaluations of his performance and a letter from Sprint's counsel threatening sanctions if Waller continued to pursue his case, Waller's counsel withdrew. Waller filed his response to Sprint's motion for summary judgment and sanctions, *pro se*, failing to state any law supporting his position.

Sprint continues to press its claim for sanctions, seeking in excess of $100,000, pursuant to Fed.R.Civ.P. 11, asserting that Waller's claims are frivolous.

## COURT'S DISCUSSION

### I. Summary Judgment Standard

Summary judgment is appropriate when there exists no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed. R.Civ.P. 56(c); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). Sprint bears the burden of initially coming forward and demonstrating the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *Ross v. Communications Satellite Corp.*, 759 F.2d 355, 364 (4th Cir.1985). When making the summary judgment determination, the facts and all reasonable inferences must be viewed in the light most favorable to Waller, the nonmoving party. *Anderson*, 477 U.S. at 251, 106 S.Ct. 2505. Sprint can bear its burden either by presenting affirmative evidence, or by demonstrating that Waller's evidence is insufficient to establish his claim. *Celotex Corp.*, 477 U.S. at 331, 106 S.Ct. 2548 (Brennan, J., dissenting).

Once Sprint has met its burden, Waller must then affirmatively demonstrate that there is a genuine issue of material fact which requires trial. *Matsushita Elec. Indus. Co. Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). There is no issue for trial unless there is sufficient evidence favoring Waller for a jury to return a verdict for him. *Anderson*, 477 U.S. at 250, 106 S.Ct. 2505.

The standard for summary judgment therefore mirrors the standard for judgment as a matter of law under Fed. R.Civ.P. 50(a), *viz.* a trial court must grant a judgment if, under the governing law, there can be but one reasonable conclusion as to the verdict. *Anderson*, 477 U.S. at 250, 106 S.Ct. 2505. A trial judge faced with a summary judgment motion "must

ask himself not whether he thinks the evidence unmistakenly favors one side or the other, but whether a fair-minded jury could return a verdict for the plaintiff on the evidence presented." *Id.* at 252, 106 S.Ct. 2505.

In opposing summary judgment, the non-moving party must "set forth such facts as would be admissible in evidence." Fed.R.Civ.P. 56(a). Inadmissible hearsay cannot be used to oppose summary judgment. *Greensboro Prof. Fire Fighters Ass'n v. Greensboro,* 64 F.3d 962, 967 (4th Cir.1995). These standards will guide the court's review which follows.

### III. Plaintiff's Title VII claim

#### A. Standard of Review

 An employer charged with discrimination is entitled to summary judgment if the plaintiff fails to establish a *prima facie* case or fails to raise a factual dispute regarding the reasons the employer proffers for the alleged discriminatory act. *See Henson v. Liggett Group, Inc.,* 61 F.3d 270, 274 (4th Cir.1995). Furthermore, "the mere existence of a scintilla of evidence in support of the plaintiff's position [is] insufficient; there must be evidence on which the jury could reasonably find for the plaintiff." *Id.* (internal citations omitted). To establish a claim under Title VII, a plaintiff must show that "but for the employer's motive to discriminate against plaintiff on the basis of [race]," the adverse job action would not have occurred. *Id.* (internal citations omitted).

 In disparate treatment cases, a plaintiff may make out a *prima facie* case by proffering direct evidence of discrimination or indirect evidence "whose cumulative probative force, apart from the presumption's operation, would suffice under the controlling standard to support as a reasonable probability the inference that but for the plaintiff's race," the defendant would not have taken the adverse employment action. *Holmes v. Bevilacqua,* 794 F.2d 142, 146 (4th Cir.1986). In the absence of such evidence, as is the case here, a plaintiff must resort to the *McDonnell*

*Douglas Corp. v. Green,* 411 U.S. 792, 802–805, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973), presumption framework.

 Under *McDonnell Douglas,* a plaintiff faced with a motion for summary judgment must first establish a *prima facie* case of discrimination by a preponderance of the evidence. *See St. Mary's Honor Center v. Hicks,* 509 U.S. 502, 506, 113 S.Ct. 2742, 125 L.Ed.2d 407 (1993); *Henson,* 61 F.3d at 274. To establish a *prima facie* case, the plaintiff must show that (1) he is a member of the protected class; (2) he was subject to some adverse job action; (3) at the time of the action, he was performing at a satisfactory level and meeting his employer's legitimate expectations; and, (4) following the action, he was replaced by someone outside the protected class. *See Karpel v. Inova Health Sys. Servs.,* 134 F.3d 1222, 1228 (4th Cir.1998).

If the plaintiff establishes a *prima facie* case, then an inference of discrimination arises. *See Henson,* 61 F.3d at 274. The defendant then can offer legitimate, non-discriminatory explanations for the allegedly discriminatory acts. *See McDonnell Douglas,* 411 U.S. at 802, 93 S.Ct. 1817. The employer's burden is one of production, not of persuasion; therefore, the employer is not required to prove the absence of discriminatory motive. *See Henson* 61 F.3d at 274–75. The plaintiff then bears the ultimate burden of persuasion and must show by a preponderance of the evidence that the defendant's explanations are merely a pretext for discrimination or otherwise are not worthy of credence. *See id.* at 275.

The straightforward question to be answered in discrimination cases is whether the plaintiff has successfully demonstrated that he was the victim of race discrimination by his employer. *See id.* To withstand summary judgment, the plaintiff must produce direct or circumstantial evidence of the employer's stated purpose to discriminate on the basis of race, which is of sufficient probative force to reflect a genuine issue of material fact. *See id.*

## B. *Prima facie* Case

The court must begin by analyzing Waller's *prima facie* case. Waller has successfully shown that he was a member of a protected class and that he was subject to an adverse employment action. To satisfy his burden of establishing a *prima facie* case, he must further show that he was performing at a satisfactory level and meeting his employer's legitimate expectations, and that he was replaced by someone not a member of the protected class.

Sprint contends that Waller cannot meet his burden of establishing a *prima facie* case because he was not performing at a satisfactory level or meeting Sprint's legitimate expectations. As proof of this contention, Sprint relies on Waller's admission in his deposition. Waller repeatedly admitted that the complaints against him were "true" and that the comments contained in his evaluations were "accurate" and "legitimate." (*See eg.* Waller Dep. at 172–74, 182, 191–92, 198–99, 213, 227 and Exs. 22, 27, 34, 40, 45, and 51). The evidence utterly fails to establish that Waller was performing at an acceptable level as an FMA.

Additionally, Waller cannot establish that he was replaced by someone outside of his protected class. Waller bears the burden of proof to establish a *prima facie* case. Sprint contends Waller was replaced by an African–American and Waller has failed to address the race of his replacement.

■ Instead of addressing the elements of his claim, and responding to Sprint's assertions, Waller relies on hearsay, subjective beliefs and speculation to support his claim. Waller's response to Sprint's motion for summary judgment is replete with what he has heard and what he had been told. However, he has provided no affidavits to support these contentions.

For example, Waller asserts that one of the individuals upon whom Henderson relied in making his determination to transfer him made a racist comment in 1976. Waller provides no substantiation for this charge. Additionally, "the mere existence of a scintilla of evidence in support of the plaintiff's position [is] insufficient; there must be evidence on which the jury could reasonably find for the plaintiff." *Henson,* 61 F.3d at 274 (internal citations omitted).

Waller also relies on a report drafted in 1995 to establish mistakes made by other FMAs. In its reply to Waller's response, Sprint provided an affidavit of one of the individuals who prepared the report but the individual has failed to signed or notarize the document and the court will not rely upon it. However, it is clear that even if, as Waller asserts, there were repetitive problems in the Operations Center, it is undisputed that only his problems were severe enough to require investigation by the vice president responsible for his area. Waller's contentions do not rebut the showing by Sprint that he failed to perform at an acceptable level.

While the court categorically denies Waller's claim of discrimination, it is sympathetic to his subjective feelings of discrimination, emotion distress and powerlessness. However, the rule of law dictates that principles of proof be followed by litigants in all actions filed in court. An individual cannot advance from filing a complaint to arguing before a jury without first establishing the essential elements of his case—any "hidden facts" must be discovered before trial. Corporations and individuals would be constantly harassed by frivolous and vexatious litigation if this were not the case.

The court finds that Waller has not and cannot establish a *prima facie* case of discrimination. Therefore, Sprint's motion for summary judgment is GRANTED.

## III. Sprint's Motion for Sanctions

■ The only remaining claim before this court is Sprint's motion for sanctions pursuant to Fed.R.Civ.P. 11. The goal of sanctions is "the efficient litigation of meritorious suits and the deterrence of suits so patently meritless that their pursuit constitutes an abuse of the judicial system." *Blue v. United States Dept. of the Army,*

914 F.2d 525, 533 (4th Cir.1990). When examining the imposition of sanctions in a civil rights case, district courts must

> resist the understandable temptation to engage in post hoc reasoning by concluding that, because a plaintiff did not ultimately prevail, his action must have been unreasonable or without foundation. This kind of hindsight logic could discourage all but the most airtight claims, for seldom can a prospective plaintiff be sure of ultimate success.

*Christiansburg Garment Co. v. EEOC*, 434 U.S. 412, 421–22, 98 S.Ct. 694, 54 L.Ed.2d 648 (1978).

Courts must strike a careful balance "between chilling Title VII claims, so central to the concept of equal opportunity, and saying that accusations, no matter how unfounded, may be brought, immune from the usual rules of law which govern litigants." *Blue*, 914 F.2d at 535. As the Fourth Circuit observed in *Blue*, Title VII claims that are meritless are normally disposed of early in the course of litigation either in a motion to dismiss or a motion for summary judgment. *See id.* "As a general matter, dismissal of a frivolous Title VII case on the merits should be a first option, whereas imposition of sanctions should be a matter of last resort." *Id.*

The Supreme Court has made clear that continuing to propagate a colorable claim after it becomes clear that the case is without merit appropriately warrants sanctions. *See Christiansburg*, 434 U.S. at 422, 98 S.Ct. 694. However, the Fourth Circuit's discussion of sanctions in *Blue* demonstrates that advice of counsel is integral to the calculus of sanctions. *See Blue*, 914 F.2d at 537 (sanctions appropriate when attorney learns or should know that claim is bound to fail; "litigants and counsel" not free to press on with futile claim).

Sprint dutifully warned Waller and his counsel of its intentions to file for sanctions if Waller continued to pursue his case in light of the evidence established by his deposition. Waller's counsel wisely withdrew, and one can speculate that his counsel advised him to abandon his claim. However, the court does not believe that Waller propagated his suit in bad faith or that he committed perjury, as litigants in *Blue* were accused of doing. Situations may exist when it would be appropriate for a court to award Sanctions against a *pro se* civil rights litigant, but this is not one of those cases. Accordingly, the court DENIES Sprint's motion for sanctions.

## CONCLUSION

For the above stated reasons, Sprint's motion for summary judgment is GRANTED and Sprint's motion for sanctions is DENIED. The clerk is directed to close this case.